1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2      - - - - - - - - - - - - - - - X

3      UNITED STATES OF AMERICA,        :        08cr415

4                     v.                :        U.S. Courthouse
                                                 Brooklyn, New York
5      RALPH CIOFFI, et ano,            :
                                                 October 5, 2009
6                     Defendants.:               11:00 a.m.

7      - - - - - - - - - - - - - - - X

8

9                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE FREDERIC BLOCK
                  UNITED STATES DISTRICT JUDGE
10

11     APPEARANCES:

12     For the Government:        BENTON J. CAMPBELL
                                  United States Attorney
13                                By:  JAMES McGOVERN
                                       PATRICK SINCLAIR
14                                     ILENIE JAROSLAW
                                       BRIAN SANO
15                                Assistant U.S. Attorneys
                                  271 Cadman Plaza East
16                                Brooklyn, New York 11201

17     For the Defendant:         DANE BUTSWINKAS, ESQ.
                                  MARGARET KEELEY, ESQ.
18                                For Defendant Cioffi

19                                SUSAN BRUNE, ESQ.
                                  NINA BEATTIE, ESQ.
20                                For Defendant Tannin

21

22     Court Reporter:           Burton H. Sulzer
                                  225 Cadman Plaza East
23                                Brooklyn, New York 11201
                                  (718) 613-2481
24                                Fax # (718) 613-2505

25     Proceedings recorded by mechanical stenography, transcript
       produced by CAT.

2

1      (Open court-case called-appearances noted.)

2      THE COURT:  Let's call the case.

3      (Case called.)

4      THE COURT:  We're going to be talking about a lot of

5  things as we go along.  We did kick off the ball today, we

6  have the jurors filling out the questionnaires, I thought that

7  all went well.

8      By all means, I want to sort of try to put you folks

9  all at ease.  There will be a lot of things that will happen.

10  Obviously, you have been working very hard and you all really

11  have shown me that you are outstanding professionals and I

12  appreciate the collective work you've done to discharge your

13  responsibilities as officers of the court  without comprising

14  the rights of your clients.

15      Having said that, I think that this morning's

16  process went well enough; hopefully, everybody agrees.  Just

17  procedurally, what is going to happen is that we'll have the

18  questionnaires, as I told the prospective jurors, completed by

19  12:00, and we're working hard to try to get them turned around

20  as quickly as possibly because I'm sensitive to the fact that

21  you have a lot of work to do.

22      Mr. Innelli tells me that the latest word that is

23  the copy center said that they should be able to be here

24  tomorrow by one and you can be here at 1:30, I think safely,

25  to pick them up and Mr. Innelli will be downstairs in the

3

1  lobby.

2          So you'll have all the better part of tomorrow, all

3  of Wednesday and Thursday.  The jurors will be calling in, as

4  you know, after seven o'clock Thursday night.  Now, we allowed

5  Friday to deal with some -- hopefully we don't get there --

6  emergencies or contingencies and we'll see how that goes, but

7  we want to try to have you folks complete your homework

8  assignment in terms of getting the list of 75 people -- I

9  think is what is we agreed upon -- by Thursday afternoon.

10         Would 3 o'clock be reasonable?  Will that work?

11         That means you're going to have to talk to each

12  other Thursday, obviously.  If something untoward happens, I

13  have Friday as a little bit of, you know, open space but let's

14  not try to use that.

15         I would rather have the jurors call in on Thursday

16  and be told who is going to be coming back the following week

17  rather than leave a message to call back on Friday, but

18  between us I have allowed a little bit of leg room there.

19         You have to, of course, work with each other and

20  that's why we're doing the questionnaire.  I really will not

21  use a questionnaire if I didn't feel I had professional

22  lawyers with me because it requires this degree of cooperation

23  to pick out the first 75 that you agree should not, amongst

24  yourselves, be discharged, so to speak, for cause.

25         I am expecting that you are going to give me an

4

1  appropriate list to work with.  If there are any untoward

2  problems, you know how to reach me, but hopefully we won't

3  have to be concerned about that.  So three o'clock Thursday

4  afternoon I'll have your list of 75, presumably.

5       Do you want to come back to court at three o'clock?

6  It's up to you.  Every day I get applications from you, and

7  who knows what is going to happen between now and Thursday,

8  but if you feel that you would have some sort of comfort level

9  in coming back here Thursday at three o'clock, you tell me how

10 you feel about it.

11      MR. McGOVERN:  Sounds fine with the government.

12      THE COURT:  Let's do that.

13      If there are any questions about any of the jurors,

14 at that time we can talk about it and see whether you can by

15 that time give me a list of concerns that you may have with

16 respect to the 75 in anticipation of possible follow-up

17 questions by me when I talk to them.

18      If you don't have it by then -- I know you have a

19 lot of work to do -- I won't need them until Tuesday, as long

20 as I don't have 10 pages on each person -- I don't expect

21 that, just short focused things that concern you.

22      So we can talk a little bit more about that Thursday

23 afternoon together with whatever residual questions we want to

24 discuss.

25      So far, without going into anything else, do you

5

1  folks have any questions about anything that's happened so

2  far?  All right.

3          We haven't discussed how many alternates.  I'm

4  thinking four, five or six.  We might try to put that to rest

5  right now.

6          I know you estimated six weeks, but usually whatever

7  estimates I have had over 15 years have never panned out that

8  way because I was born in Brooklyn and I talk fast, so it may

9  be five weeks realistically, who knows.

10          Whether this will be done before or after

11  Thanksgiving, we're going to be bumping up against

12  Thanksgiving obviously and we'll have to process that as

13  things materialize.

14          What do you think, five, six, four?

15          MR. McGOVERN:  The government would advocate for six

16  alternates, just because of the length of the trial and many,

17  all the other sort of alternatives that are out there.

18          THE COURT:  What does defense counsel say?

19          MS. BRUNE:  Good morning, your Honor.  I think if

20  your Honor is prepared to have six, that would be fine.

21          MR. BUTSWINKAS:  I agree.

22          THE COURT:  Let's do six then.  All right.

23          So be mindful of your peremptories.  I have to look

24  up the Code again to see what we deal with when we deal with

25  six, but I think you can each have one peremptory for each of

6

1    them, I don't know, I'll double check on that.  We'll talk

2    more about the exercise of your peremptory challenges come

3    Tuesday.  We don't have to be burdened with it now.  Unless we

4    see the need to give the defendants more to begin with, I

5    think it's reasonable to keep to that.

6            Anything else about that?  Let's talk about where

7    we're at today.  The fur keeps flying, and I try to make a

8    list of things that we have to talk about.  We have the Curcio

9    motions and we still have some questions about what to do with

10   the monies that were pledged and the taking of the $2 million.

11   Let's talk about that first.

12           I know that the government wants to have the

13   opportunity to talk about Ferraris and country clubs, if I

14   read the papers correctly, Mr. McGovern.

15           MR. McGOVERN:  I think what we're saying, your

16   Honor, is that we're seeking to offer evidence of Mr. Cioffi's

17   financial condition during the period of time relevant to the

18   conspiracy to show his motives in committing the crimes.

19           THE COURT:  I understand the theory.  I'm going to

20   give you some play in the joints but not as much as you would

21   like.  The jury is going to know this person made what, 20

22   million dollars a year in income?

23           MR. McGOVERN:  There is no question about that.

24           THE COURT:  They are going to realize obviously if a

25   person makes 20 million dollars he obviously has some fancy

7

1   cars and lives a good lifestyle.  I don't think you need more
2   than that.

3          I think the redemption of the $2 million strikes me
4   as something that we'll give you some opportunity to bring out
5   because it does go to motive, I think.

6          MR. McGOVERN:  It does, your Honor.  Also, the fact
7   that the defendant, as we set forth in our papers, the fact
8   that Mr. Cioffi has overextended himself as he had --

9          THE COURT:  I understand the theory.  I have to put
10  some restrictions on you.

11         Look, I made some factual notes that the submission
12  from the government that I got is that Mr. Cioffi intended to
13  do pledge his investment in the Enhanced Fund as collateral in
14  November of 2006.

15         MR. McGOVERN:  December 20 of 2006 he actually
16  pledged.

17         THE COURT:  Bear Sterns refused to consent, we know
18  that.  Cioffi went ahead with the pledge anyway.  There is
19  some issue as to whether or not Bear Stearns did or did not
20  consent -- I'm not terribly concerned about that.  The pledge
21  agreement was executed December 20, 2006, right?

22         MR. McGOVERN:  That's right.

23         THE COURT:  The redemption of about one-third of the
24  total investment happened on April 1, 2007.  On July 23,
25  2007, he advised the Florida bank that the security deposited

8

1  worthless.

2        I'm going to allow you to adduce that because I

3  think it does cover the relevant time period and I will allow

4  it on the issue of motive.  I'll give the jury proper

5  instructions, if defense counsel wishes me to do so, but

6  that's it.

7        We're not going to get into any more than that, just

8  the fact that he did redeem it during that time period and I

9  don't think I need to be concerned about whether Bear Stearns

10  agreed to it or not.  What is relevant is that he decided to

11  use that money to cover his pledge.

12        MR. McGOVERN:  If I may, just to have a sort of more

13  fulsome factual picture here.

14        What happened was that Mr. Cioffi pledged the money,

15  the 5.7 million that he had in the fund so that he could

16  secure a loan in Florida.

17        THE COURT:  I know that.

18        MR. McGOVERN:  He then redeemed a part of that

19  collateral in April of 2007.  The government is seeking to

20  offer the fact that he, when he pledged it, did so without

21  Bear Stearns consent.

22        THE COURT:  I'm going to allow you to bring out the

23  facts that he did need that money and he had a motive to get

24  that money.  I think that is relevant on motive.

25        I'm not going to really allow you to get too much

9

1  into whether Bear Stearns consented to it or not.  I don't

2  know whether that is so terribly relevant.

3           MR. McGOVERN:  Well, the fact that Bear Stearns did

4  not know about the pledge would color Mr. Cioff's disclosures

5  to Bear Stearns.

6           THE COURT:  I don't think so.  I think he took the

7  money.  I think that is relevant.  I have to balance this out.

8           I'm going to let you do that, but I don't think we

9  need anything about this internal problem with Bear Stearns as

10 to what their policies are in terms of agreeing, not to agree,

11 whether or not it was permissive or whether it was mandated.

12 We get involved in a lot of potential collateral information

13 which I don't think is terribly relevant.

14          MR. McGOVERN:  I totally understand what the court's

15 position is.  I just want the representation to be clear that

16 the number two person, the de facto number two person at Bear

17 Stearns told him he wasn't allowed to do this.

18          THE COURT:  I think it's the act of his doing it

19 that is really the relevant issue on motive.  I'm going to

20 allow that.  You don't have to go beyond that.

21          You still want Ferraris, you still want country

22 clubs?  I'm not going to allow that.

23          MR. McGOVERN:  The government was never out to paint

24 Mr. Cioffi --

25          THE COURT:  Well, you have in your papers, you talk

Burton H. Sulzer - OCR, CM, CRR

1   about three Ferraris and a bunch of country clubs.

2          MR. McGOVERN:  I believe the defense highlighted the

3   Ferraris.  We never mentioned them.

4          THE COURT:  The jury is going to know that they are

5   dealing with wealthy people.  You don't have to talk about

6   their lifestyle.

7          MR. McGOVERN:  His real estate investments would be

8   relevant to show that he had expended a great deal -- during

9   the relevant time period, your Honor --

10         THE COURT:  We'll see how that comes.  I'm not going

11   to make all the definitive rulings in advance of trial because

12   it's not right to do that.

13         MR. McGOVERN:  Certainly fair, your Honor.

14         THE COURT:  I'm just giving you are some sense of

15   things.  So don't mention in your opening statements anything

16   about lifestyle or the fact he's a wealthy man.  Of course you

17   can say that.

18         MR. McGOVERN:  Would the government be permitted to

19   offer the testimony with respect to the pledge that there was

20   some year that Bear Sterns believed that a pledge would have

21   been something that Bear Stearns for business reasons would

22   have wanted Mr. Cioffi to reveal to his investors?

23         THE COURT:  No.  I don't think we need to go that

24   far.  You have enough here just to show that he had a motive

25   to redeem $2 million, that's sufficient.  Okay.

1       Is there anything else now, other than the so-called

2  Curcio matters which I will save for last, from the

3  government's perspective, in addition you wish to talk about

4  today?

5       MR. McGOVERN:  I think the Curcio matters sort of

6  preempt a lot of the other matters, your Honor.

7       We have responded to the defendant's letter about

8  our witness list being changed.  We obviously oppose that.

9       THE COURT:  We'll talk about that.  You gave me an

10  exhibit list of what, some four or five hundred proposed

11  exhibits.  I think about half of them, if not more so, are

12  e-mails, right?

13       MR. McGOVERN:  That's right.

14       THE COURT:  I imagine there will not be foundation

15  problems or admissibility problems with respect to them, but

16  defense counsel can give me a heads up so if these things are

17  going into evidence without objection you can let me know

18  right now.

19       MR. BUTSWINKAS:  We are certainly not going to have

20  authenticity issues.  We will obviously deal with exhibits

21  depending on why they are coming in and for what purpose.

22       THE COURT:  Relevancy issues or whatever, but we're

23  not going to have to worry about authenticity issues.

24       MR. BUTSWINKAS:  That's correct.

25       MR. McGOVERN:  I believe Mr. Butswinkas has been

12

1    kind enough to agree to a stipulation as to the authenticity

2    of all that type of matter.

3          THE COURT:  I'm glad you worked that out.  So what I

4    tell the jurors is, when exhibits come in, if there is no

5    objection, I'm going to tell them we spoke in advance on a lot

6    of these things, we don't have to have counsel get up every

7    second and say "objection" or "no objection" and if they don't

8    hear anything it will be deemed admitted, the admission of

9    these documents.

10         The defendants are concerned about the fact that

11   there are eleven new witnesses that appear on the last witness

12   list I received.

13         When I went over the papers here, I think you folks

14   have done a pretty good job confined by the tenor of my

15   instructions in terms of preparing.

16         There were 32 proposed witnesses back in July.  I

17   had a list and now there are 37.  I don't understand what the

18   eleven is all about.  Do you want to speak to that

19   Mr. Butswinkas or Miss Brune or anybody else?

20         MS. BRUNE:  Your Honor, some of the witnesses who we

21   diligently prepared for over the summer were actually taken

22   off the latest list.

23         THE COURT:  You prepared for them.

24         MS. BRUNE:  They are off the list now so we wasted

25   our time.  So there are a total of eleven.

13

1          THE COURT:  Are they significant people?  Is there

2     really a problem?

3          MS. BRUNE:  Some of them are potentially quite

4     significant.

5          THE COURT:  I don't know.  You're shooting blanks

6     here.  If you have one or two people who you're concerned

7     about in terms of being blind-sided, let me know.

8          MS. BRUNE:  We have investor representative Bella

9     Borg Brenner.  We have Jennifer Wu.  I would say those are the

10    two that pose the problem.

11         THE COURT:  What is your concern about Bella Borg

12    Brenner?

13         MS. BRUNE:  She's the representative of many of the

14    institutional investors, funded fund investors.  There is a

15    tremendous amount of work that ordinarily we would have done

16    over the summer to root through all the materials that relate

17    to her and to follow up with appropriate trial subpoenas.

18         With respect to Miss Wu, we have not received any

19    documents from the employers --

20         THE COURT:  You say Miss Wu?  I'm looking at the

21    list I have here.  Which one is that?

22         MS. BRUNE:  I think Jennifer Wu.

23         THE COURT:  Number 10, yes.

24         MS. BRUNE:  Those two are the ones where there is a

25    tremendous amount of factual work.  Ordinarily, your Honor, we

1    have would have sent a whole series of trial subpoenas out.

2           THE COURT:  Mr. McGovern, tell me what you need

3    these two people for so these folks will have to worry about

4    having to do an enormous amount of work if it's not necessary

5    for them to do that.

6           MR. SINCLAIR:  Your Honor, good morning.

7           With respect to Miss Borg Brenner, Miss Brune has

8    correctly pointed out that she was an investor -- or was a

9    representative of an investor in the Fund.

10          She will testify about conversations that she had

11   with the defendants.  These were conversations that were

12   noticed in our may 8 letter.

13          Miss Borg Brenner also appeared on earlier

14   iterations of the government's witness list and she'll testify

15   about what she learned in one-on-one meetings and what she

16   perceived on the conference calls that have been noticed into

17   evidence.

18          Similarly, Ms. Wu is -- unfortunately she lives in

19   Switzerland and she works for Palomar Investments there, so

20   our power to speak with her is somewhat hammered by that fact.

21          THE COURT:  Do you need her?  I know there are a lot

22   of times you want to be extra cautious, I can respect that,

23   but let's be realistic how we are approaching the problem.

24          MR. SINCLAIR:  She's actually a speaker on one of

25   the conference calls.  She's an investor who raises her voice

1  in January 2007 and asks very pointed questions about the

2  holdings of sub prime investments in these two funds and she

3  is trying to in this call dig in and learn more about what is

4  the substance of the sub prime fund.

5         Your Honor, for the record the government's has not

6  had the opportunity to speak with her either and yet we are

7  exercising our right --

8         THE COURT:  So that defense counsel knows, her

9  testimony is going to be limited to a particular conversation

10 at a particular time with someone?

11        MR. SINCLAIR:  There are two things that it will be

12 limited to -- I didn't mention the other thing -- she also was

13 the recipient of one of the defendant Tinnan's e-mails in

14 March 2007, when he specifically represented to her that he

15 himself would be adding more money to the Fund.  She then

16 subsequently recommended to her client to invest more money in

17 the Fund.

18        So it's critically important things that are

19 documented in e-mails that have been identified as government

20 witnesses already and that certainly the defense has been

21 aware of.

22        THE COURT:  That helps in terms of making some fair

23 disclosures to defense counsel.

24        When is she going to be here, are you bringing her

25 from Switzerland?

16

1          MR. SINCLAIR:  We're in that process.
2   Unfortunately, we have to communicate through Main Justice
3   which then in turn communicates with the Justice Department
4   equivalent in Switzerland, which then contacts Palomar, which
5   then contacts Miss Wu.
6          THE COURT:  My concern is that she's here soon
7   enough so that defense counsel can have an opportunity to
8   speak to her if they wish to do that.
9          MR. SINCLAIR:  We will alert defense counsel as to
10  when Miss Wu is scheduled to land in the United States.
11         THE COURT:  This will not happen right away, this
12  will be week four or five, something like that?
13         MR. SINCLAIR:  It probably wouldn't happen within
14  the next couple of weeks.
15         THE COURT:  You folks are advised of that in ample
16  time.  I will make sure that you have access to her if she is
17  willing to speak to you.
18         The other person, when are you planning to call
19  Bella Borg Brenner?
20         MR. SINCLAIR:  Miss Borg Brenner is currently on
21  vacation I believe.  We have been communicating with her
22  counsel.
23         She may be in the beginning part of the case.  It's
24  worth noting that the defendants have issued 17(c) subpoenas
25  to Miss Borg Brenner's employer and received documents,

1   including her notes and e-mails around the relevant time.

2            THE COURT:  So they are not blind-sided by this.  Do

3   you anticipate that she'll be called in the first week or two,

4   just to be practical about it?

5            MR. SINCLAIR:  It's possible that she would be in

6   the first two weeks of trial, yes, your Honor.

7            THE COURT:  All right.  Do you have any other

8   concerns, Miss Brune, about this?

9            MS. BRUNE:  I can see where things are headed your

10  Honor, so thank you.  I think those are the two that are most

11  problematic.  This case is has been pending for fourteen

12  months.

13           THE COURT:  We're going to make sure that over the

14  next four, five or six weeks you'll have ample opportunity to

15  speak to prospective witnesses and to make shoe you're not

16  going to be subject to any major surprises.  Okay?

17           MS. BRUNE:  We would ask also that any 3500 material

18  be promptly turned over.

19           THE COURT:   Is there any problem with 3500 material

20  at the present time?

21           MR. SINCLAIR:  We have already turned over 3500

22  material for Miss Borg Brenner, and to the extent we have the

23  opportunity to speak with Miss Wu, we anticipate that we would

24  produce 3500 material.

25           MS. BRUNE:  Fine.

18

1          THE COURT:  Very good.

2          MS. BRUNE:  Thank you.

3          THE COURT:  So the only thing we have left I think

4    is the Curcio matter.

5              As far as the missing tablet PC and the note pad,

6    I'm not going to make any determinations now, I'm not going to

7    have a hearing now.  You know, I'm going to look at all those

8    532 exhibits, listen to all the 38 witnesses, and be in a

9    better position to really assess the relevancy and importance

10   of those particular items of prospective evidence that has

11   gone missing.  I think during the course of the trial I would

12   feel more comfortable in doing it that way.

13         MS. BRUNE:  May I be heard briefly on that?

14         THE COURT:  Yes.

15         MS. BRUNE:  The defense is presented an enormous

16   problem, and I understand what your Honor is trying to do, and

17   I think ordinarily it would be fine, but it really puts us

18   behind because that kind of proof is incredibly incendiary

19   and what I don't want to have happen is, I give an opening

20   statement that says what it says, the government mentioned the

21   tablet PC issue and then it comes up during the trial and the

22   jury thinks I've broken faith with them.

23         THE COURT:  We're not going to have the government

24   talk about the PC or the note pad during their opening

25   statements.

1          MS. BRUNE:  The problem is if it comes in and I

2     haven't addressed it in opening, I'm not going to have an

3     opportunity to address it until closing, and I'm concerned

4     that the jury will think that --

5          THE COURT:  I will take care of that during the

6     course of the trial and make sure we give appropriate

7     instructions if in fact they're going to be in evidence.

8          Look, the truth of the matter is, it's just one or

9     two items amongst many items.  It may well be that I may rule

10    that it's not terribly relevant considering the massive

11    material that the government may be producing.

12         Right now I really don't know because we do not know

13    what were on those particular devices, right?  So we're

14    shooting blanks.

15         It may well be that I'll have more intelligence to

16    offer if I listen to a little bit of the case, and it may well

17    be that I'm not going to allow the government to deal with

18    those in terms of consciousness of guilt.

19         By and large, I don't like to insert consciousness

20    of guilt into a trial unless there is a real, real, real

21    compelling reason to do so, and just the naked disappearance

22    of these, you know -- what do we call them devices, in the

23    first instance -- I don't think necessarily rings the bell as

24    I sit right now, but if during the course of the trial I hear

25    certain things that cause me concern, we will revisit the

20

1  issue.  I can't offer you more comfort than that at the

2  present time.

3           MS. BRUNE:  Thank you, your Honor.

4           THE COURT:  All right.  Does that leave just the

5  Curcio matter?

6           MR. McGOVERN:  I just want to raise the fact that

7  the government -- and in fairness to the defendants, we only

8  filed this motion last week -- but the government has moved to

9  preclude the defense experts in this case.

10          THE COURT:  I just got those papers.

11          MR. McGOVERN:  I didn't want to walk away from it

12 without having raised it.

13          THE COURT:  I haven't limited you to any time

14 frames.  I'm been getting papers every single day and I have

15 been giving you all the flexibility in the world to inundate

16 me with whatever it is that concerns you, but you have to

17 appreciate that if I allow you that flexibility I can't turn

18 this thing around by just snapping my fingers.

19          We'll deal with it at the appropriate time.  I don't

20 want to deal with it now.  You haven't even responded to that.

21          MR. BUTSWINKAS:   That's correct.

22          THE COURT:  It's good to be given these heads up, I

23 appreciate that, but I don't have to decide all these things

24 necessarily at the time that you send me these papers and

25 that will happen during the course of the trial.  Okay?

21

1          MR. McGOVERN:  Okay.

2          THE COURT:  Curcio.  So there are two things that

3  concern the government and, as I noted here, the government is

4  contemplating calling as a witness Catherine Redlich -- is

5  that how she pronounces the name?

6          MR. McGOVERN:  Redlich, your Honor.

7          THE COURT:   -- to testify about circumstances

8  surrounding the production of an e-mail -- this is one of

9  hundreds of e-mails, I take it, right, from Matt Tannin to a

10 client re McGarrigal and the SEC investigation.

11         According to the government, Miss Redolich will

12 testify that McGarrigal informed her of the e-mail, that she

13 spoke to Tannin's counsel about the e-mail and that she and

14 Miss Beattie agreed to produce the e-mail to Bear Stearns'

15 counsel.

16         What is your concern about that?  Why do you think

17 that is particularly relevant and I should really get involved

18 in that?

19         MR. McGOVERN:  Your Honor, why it's relevant first.

20 First of all, I think the record should be correct here

21 because -- I take some level of responsibility for this

22 because we spoke to Miss Redlich's attorney yesterday, or we

23 were informed by Miss Redlich's attorney that what happened

24 was on October 29 of '07, Miss Redlich was given the e-mail

25 by.

22

1   Mr. McGarrigal and she contacted Miss Brune's firm on October

2   30 of '07 and then ultimately, on November 6 of '07, Miss

3   Redolich and Ms. Brune turned it over.

4           THE COURT:  It was turned over.  It's one of many

5   e-mails.  I have no idea what it's all about, but you want

6   this to be part of your concept that there's a consciousness

7   of guilt involved here?

8           MR. McGOVERN:  Actually, your Honor, what we're

9   driving at here is it just gives the government's ability to

10  rebut what it is we expect the defense to claim.

11          We expect that defendant Tannin is going to get

12  before the jury and argue to the jury that he entirely of his

13  own free will and voluntarily produced this piece of what I

14  think --

15          THE COURT:  One e-mail you're talking about?

16          MR. McGOVERN:  One e-mail quoted at length in the

17  indictment, the e-mail that defense counsel refers to as the

18  famous e-mail in court.

19          THE COURT:  So that is a real smoking gun e-mail

20  alledgedly, right?

21          MR. McGOVERN:  It's a very important piece of

22  evidence in the government's case and we should be permitted

23  to rebut the suggestion that the importance of that e-mail is

24  somehow mitigated by their voluntary production.

25          THE COURT:  Is that proposed Exhibit 55?

23

1          MR. McGOVERN:  It is, your Honor.

2          THE COURT:  Let's hear from you, Miss Brune.  You

3    know what the government's concern is, that you're going to

4    put in sort of like an advice of counsel type of defense in

5    respect to that e-mail.  Is there anything I need to be

6    concerned about here?

7          MS. BRUNE:  I don't think that is what the

8    government proposes.  What I think is that the government

9    knows that the e-mail resided on Mr. Tannin's account and that

10   he was able to pull it down from the account and to produce

11   it.

12         The copy of the exhibit book that I received from

13   the government had Exhibit 55 omitted -- I'm not sure if it's

14   the same for your Honor, I'm happy to hand it to the clerk --

15   but the e-mail legend --

16         THE COURT:  What does this e-mail say, so we know

17   we're talking about the same document?  You have it in front

18   of you.  I don't have it in front of me.  Is it lengthy?

19         MS. BRUNE:  Not that lengthy.  Would your Honor like

20   to see it?

21         THE COURT:  If it's just a couple of sentences, you

22   can read it to me.

23         MS. BRUNE:  No.  It's longer than that.  But the

24   point I'd like to make is that you can see on the face of the

25   document that it was available to Mr. Tannin and printed out

24

1  by Mr. Tannin or his lawyers on October 31, and the facts are

2  that it was produced jointly by Mr. McGarrigal's counsel and

3  Mr. Tannin.

4        The government's whole theory here is that Mr.

5  Tannin is going around trying to suppress evidence.  Why they

6  are so whooped up is they think that if the jury knows what

7  the facts are, that Mr. Tannin actually produced it, that that

8  is going to undercut their theory.  I mean, I don't think it's

9  so important one way or the other.

10       THE COURT:  You did produce this?

11       MS. BRUNE:  We did produce it.

12       THE COURT:  What is the problem?

13       MR. McGOVERN:  Your Honor, the government is not

14  whooped up about this.  What is happening here is the defense

15  is trying to present a false impression to the jury that --

16       THE COURT:  How is the defense trying to do that?  I

17  don't understand that.

18       MR. McGOVERN:  By suggesting that go Mr. Tannin came

19  forward with this document on his own without the urging of

20  Mr. McGarrigal's counsel, who told him that I was producing it

21  anyway, that is why he produced it.

22       If you look at the dates of the production.

23  Mr. McGarrigal found his e-mail on October 29, contacted

24  counsel for Tannin on the 30th.  He prints it out on the 31st.

25       It is at the urging of Mr. McGarrigal's counsel that

25

1    it ever gets produced at all, frankly.

2         THE COURT:  It may be the case.  When I hear the

3    testimony I'll be able to know all about that.

4         MS. BRUNE:  One significant problem is that --

5         THE COURT:  What are you going to contend here?

6    You're going to contend something opposite than what.

7    Mr. McGovern just told me?

8         MS. BRUNE:  I don't think so.  I think if your Honor

9    would like, and if we can work through the issue of joint

10   defense privilege, we may be able to dispose of this with a

11   stipulation.

12        The first part of what the government proposes to

13   prove is available to them via the testimony of Ray

14   McGarrigal.  They said from the beginning -- there has been

15   some consistency on their witness list on this point -- that

16   Mr. McGarrigal is a government witness.  So we don't need to

17   stipulate or have that testimony.  You can also establish that

18   it was --

19        THE COURT:  What I have to do now is just try to

20   flush out any possible Curcio scenario, that all we need do

21   now.  We don't have to get more deeply involved in the content

22   of the e-mail or the circumstances of its production.

23        Just as a matter of caution, if there is a

24   possibility that during the course of the trial there may be

25   this tension that surfaces then maybe we should do a Curcio

26

1    and then I can rule on the issues that I have to be concerned

2    about, any Curcio problems that may arise during the course of

3    the trial.  That seems to be the concern that you're

4    broaching.

5             MS. BRUNE:  I understand.  Here is the concern.

6    Essentially, a Curcio with respect to this issue would be that

7    Mr. Tannin has to sit silently by and not present any evidence

8    if in fact Ms. Redlich's testimony is in contradiction to what

9    we know to be the facts.

10            THE COURT:  That could possibly happen.

11            MS. BRUNE:  Given the fact that her testimony is

12   entirely privileged, covered because it's covered under a

13   joint defense privilege, it's simply is inadmissible.

14            The government can get whatever part of this is

15   important to them, they can argue the inferences, we can argue

16   the inferences, but --

17            THE COURT:  That may be true.  If this is going to

18   be privileged, why do we have to fuss about it?

19            MR. McGOVERN:  There is nothing privileged about

20   what the government is seeking to introduce.  Miss Redolich

21   will testify that her client gave her Exhibit 55.

22            Miss Redolich will testify that she called Nina

23   Beattie.  She won't say what it is that she told -- she can

24   say what she told her, and then after that phone call they

25   produced it together.

27

1          Your Honor, if I may dispel the Curcio issue here,

2   it's really whether Mr. Tannin is willing to waive his ability

3   to call either Ms. Brune or Miss Beattie as a witness to

4   contest it.  That's the issue.

5          THE COURT:  So maybe we should process it quickly.

6   I don't think it's going to be a problem.  I don't think.

7   Mr. Tannin is going to want new counsel I suspect as a result

8   of this.

9          MS. BRUNE:  Your Honor can I add one additional fact

10  to the mix before you make up your mind about this?

11         What the government is omitting now to state though

12  is that Miss Redlich has made plain that she believed that any

13  of the testimony -- or most of the testimony that they

14  proposed to elicit from her is covered by a valid

15  attorney-client/joint defense privilege.  So it seems to me

16  unlikely that the --

17         THE COURT:  You may be right, but I'm not into what

18  the breadth of the dimension of the so-called joint defense

19  privilege is as I sit right now.

20         I have a lot of balls up in the air, but I think you

21  should ask your client a little bit about if push came to

22  shove and there was some issue about who produced that and

23  maybe what the circumstances were which counsel have some

24  information about, or might be able to shed light during the

25  course of the trial, do you have any issue with the fact that

1  they have to waive their so-called rights not to allow counsel

2  to do that?

3          I think I should process it.  The same thing with

4  the g-mail situation.  You have this agreement as to whether

5  the g-mail account was deleted.

6          I guess I'm just curious, Mr. Sinclair, Mr.

7  McGovern, how do you delete an account?  I thought that in

8  cyberspace it's impossible to do that.

9          MR. McGOVERN:  I'm not an expert on that, your

10 Honor, but the way that you do it with g-mail is you sign on

11 to your account, you put in your password, and then you are

12 followed through a number of prompts under which you say you

13 want to delete your account and you delete your account.

14         THE COURT:  I understand that even if you do that it

15 still exists someplace.

16         MR. McGOVERN:  It's an intentional act to delete

17 your account.  It does not remain in cyberspace in perpetuity.

18         THE COURT:  I don't know.

19         MR. McGOVERN:  We actually do know because Google

20 told us.

21         THE COURT:  Well process that anyway.  The argument

22 is that there is some consciousness of guilt associated with

23 that, and I'm not going to rule on that until we have to deal

24 with that during the course of trial, but for Curcio purposes,

25 I think it's fair to process that today.

29

1    MR. McGOVERN:  Well, let me see if I can try to

2    distill these Curcio issues as we see it.

3    With respect Redlich situation, the turning over of

4    the e-mail, we believe that we can resolve that by stipulation

5    with the defense.

6    If they agree to the time line as we propose it, and

7    Miss Redlich, who is known to them, states that things

8    happened on the timeline, the government would agree to

9    stipulate away Miss Redlich's testimony, which would then

10   allow Mr. Tannin to give a full Curcio waiver as it relates to

11   those issues.

12   As to the deletion or, with all due respect, the

13   closure of the account as Miss Brune refers to it, it's a

14   little bit different.  I think that the Circuit, in the event

15   this case every reaches it, is going to really want to see

16   that the court and the government and defense counsel vetted

17   the facts as to what actually happened here because, as of

18   March 11 of 2007, there was a version of the g-mail account

19   that was sitting in Miss Brune's office and was privileged and

20   there was a version at a third party provider.

21   He took steps to delete, close, erase, whatever word

22   you want to use, to remove the one that was at the third party

23   provider.  Now we have no reason to doubt Miss Brune's

24   representations in her letter -- as the court pointed out,

25   she's an esteemed member of the bar -- we're confident that

30

1   there's probably a very, very good reason why she did that or

2   counseled him to do that.

3         What we don't have is that reason, because nowhere

4   in her papers does she offer a justification for why it is

5   that is she counseled Mr. Tannin to do that.

6         The law in this circuit is that if there is a

7   potential --

8         THE COURT:  You're talking to the choir now.  I

9   understand where you're coming from. Your concern is not

10  unreasonable.

11        MR. McGOVERN:  Thank you.

12        THE COURT:  Miss Brune.

13        MS. BRUNE:  We have been very mindful not to waive

14  any privilege.  What I'm about to say now is not to waive any

15  privilege.

16        As we said in our papers, Mr. Tannin's account was

17  closed pursuant to the advice of counsel.  It's therefore not

18  probative on any issue other than possibly his willingness to

19  adhere to advise of his counsel.  There was nothing improper

20  about closing the account.

21        Everything was preserved.  Mr. Tannin has been

22  served with a trial subpoena, and the government takes the

23  position that if he takes the stand, that at that point he

24  will have waived any privilege he has and he'll have to

25  produce the items that have been preserved and withheld

31

1   pursuant to the U.S. Constitution.  I think they are right

2   about that.

3           The government failed to pursue anything with

4   respect to these accounts until about two years after the

5   Funds collapsed and apparently at that point they were no

6   longer up on Google's server or Google's backup server.

7           I think that what happened to these items,

8   apparently -- and I don't know -- but is a result of two

9   entities over which Mr. Tannin has no control.  First, the

10  government, which was aware of the existence of the account

11  since November of 2007 when we and Mr. McGarrigal's counsel

12  notified BSAM's counsel of the e-mail and they chose to wait

13  all that time.  That is not within our control.  A reasonable

14  counsel, I'm not talking about my own --

15          THE COURT:  What period of time passed from the time

16  the government was aware of the existence of the g-mail

17  account until they wanted it produced?

18          MS. BRUNE:  Well, they certainly sought to have it

19  produced, there was an SEC subpoena, but there was also no

20  mystery that we were asserting a Fifth Amendment privilege by

21  the time we got around to January of 2008.

22          THE COURT:  That doesn't necessarily give you

23  license to have it deleted just because you're asserting the

24  privilege.

25          MS. BRUNE:  That is true, your Honor, and we did not

32

1  delete it.

2       There is a difference between closing an account and

3  deleting it.  What Google's publicly announced policy was, was

4  that the items are maintained on the active server that Google

5  maintains for up to 60 days and for an indefinite period on

6  the backup server.

7       THE COURT:  Explain to me, all this information is

8  available, it's not missing?

9       MS. BRUNE:  It's certainly preserved in my office.

10 It's not currently available because of his constitutional

11 rights.

12      THE COURT:  Whether it will be admissible or not, or

13 come under the umbrella of any privilege we'll sort out, but

14 it's not missing?

15      MS. BRUNE:  No.

16      THE COURT:  So it's here.  So the government's

17 position is that you think it bears upon consciousness of

18 guilt to some extent?

19      MR. McGOVERN:  Your Honor, it's a couple of things.

20 First of all, let me respond that the government didn't drop

21 the ball here and wait 18 months to do a search warrant.

22      We were misled or we were told by Miss Brune and

23 Miss Richard that they were going to produce these items on a

24 rolling basis and ultimately they said that since the

25 government thought enough to prosecute their client that they

1   may assert a Fifth Amendment privilege.

2           THE COURT:  The privilege came after that.

3           MR. McGOVERN:  Yes.  So by closing the account, it

4   put it forever out of the reach of the government -- or even

5   within 60 days, they gave us a 60 day leash to try and find

6   it.

7           We're trying to deal with a bigger issue, your

8   Honor, which is -- and Miss Brune makes -- it seems like she

9   has an explanation for this, you know, why it was appropriate

10  under those circumstances despite the subpoena and the

11  preservation order, to close the account.

12          What we are dealing with here, I think, from a

13  Curcio standpoint is, we're worried about a per se reversal if

14  there's a chance that there's some sort of implication that

15  somehow it was not proper to do that in the manner it was

16  done.

17          I think she's making a very good case for why -- it

18  sounds to us that she acted in some way that was --

19          THE COURT:  I understand.  Here's my take on it.

20          First of all, as far as the one e-mail situation, it

21  may well that there is no need to have a Curcio process in

22  respect to that if you work out this arrangement that you're

23  talking about.

24          As far as the other is concerned, my tendency is

25  that it can't hurt to have a Curcio on the g-mail.  I'm not

34

1  going to rule whether it's admissible or how far, but we

2  should have a Curcio.

3          Let's all revisit this Thursday afternoon at three

4  o'clock.  Presumably, at that time you'll have come to an

5  agreement which will render nugatory your first concern about

6  the e-mail mail and then we'll do the g-mail Curcio at that

7  time.  Okay?

8          MR. McGOVERN:  I think that is a great idea.

9  Actually, what we would ask that Mr. Tannin, just like -- I'm

10 sure that your Honor has done in a hundred, if not probably

11 three hundred Curcio hearings in your time -- we would ask

12 that he be permitted to contact Curcio counsel so that he

13 could vet these issues so that he understands what is going

14 on.

15         THE COURT:  Let's not be too chilling here.  He'll

16 have the opportunity to do what the law laws him to do

17 Thursday and the trial is not going to start until Tuesday, so

18 we have ample time to deal with that.

19         Be prepared that, knowing that I have to advise him

20 of his right to have independent counsel at his disposal, and

21 to see that he has independent counsel here on Thursday so

22 that he can go in that direction if necessary and we can

23 complete the Curcio hearing possibly that afternoon.

24         MS. BRUNE:  Yes, your Honor.

25         THE COURT:  Anything else that we need to talk about

35

1    now?

2              MR. McGOVERN:  I think we're good.

3              THE COURT:  You are all doing fine.

4              We'll see you Thursday at three o'clock, hopefully.

5    Work hard on your questionnaires and get me a good solid list

6    of 75 people.  We'll see you Thursday afternoon.

7                        * * * * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| ' | 6 | air [1] - 27:20 |
|---|---|---|

**'**

**'07** [3] - 21:24, 22:2

**0**

**08cr415** [1] - 1:3

**1**

**1** [1] - 7:24
**10** [2] - 4:20, 13:23
**11** [1] - 29:18
**11201** [2] - 1:16, 1:23
**11:00** [1] - 1:6
**12:00** [1] - 2:19
**15** [1] - 5:7
**17(c** [1] - 16:24
**18** [1] - 32:21
**1:30** [1] - 2:24

**2**

**2** [3] - 6:10, 7:3, 10:25
**20** [4] - 6:21, 6:25, 7:15, 7:21
**2006** [3] - 7:14, 7:15, 7:21
**2007** [7] - 7:24, 7:25, 8:19, 15:1, 15:14, 29:18, 31:11
**2008** [1] - 31:21
**2009** [1] - 1:5
**225** [1] - 1:22
**23** [1] - 7:24
**271** [1] - 1:15
**29** [2] - 21:24, 24:23

**3**

**3** [1] - 3:10
**30** [1] - 22:2
**30th** [1] - 24:24
**31** [1] - 24:1
**31st** [1] - 24:24
**32** [1] - 12:16
**3500** [4] - 17:17, 17:19, 17:21, 17:24
**37** [1] - 12:17
**38** [1] - 18:8

**5**

**5** [1] - 1:5
**5.7** [1] - 8:15
**532** [1] - 18:8
**55** [3] - 22:25, 23:13, 26:21

**6**

**6** [1] - 22:2
**60** [3] - 32:5, 33:5
**613-2481** [1] - 1:23
**613-2505** [1] - 1:24

**7**

**718** [2] - 1:23, 1:24
**75** [5] - 3:8, 3:23, 4:4, 4:16, 35:6

**8**

**8** [1] - 14:12

**A**

**a.m** [1] - 1:6
**ability** [2] - 22:9, 27:2
**able** [5] - 2:23, 23:10, 25:3, 25:10, 27:24
**access** [1] - 16:16
**according** [1] - 21:11
**account** [17] - 23:9, 23:10, 28:5, 28:7, 28:11, 28:13, 28:17, 29:13, 29:18, 30:16, 30:20, 31:10, 31:17, 32:2, 33:3, 33:11
**accounts** [1] - 31:4
**act** [2] - 9:18, 28:16
**acted** [1] - 33:18
**active** [1] - 32:4
**add** [1] - 27:9
**adding** [1] - 15:15
**addition** [1] - 11:3
**additional** [1] - 27:9
**address** [1] - 19:3
**addressed** [1] - 19:2
**adduce** [1] - 8:2
**adhere** [1] - 30:19
**admissibility** [1] - 11:15
**admissible** [2] - 32:12, 34:1
**admission** [1] - 12:8
**admitted** [1] - 12:8
**advance** [2] - 10:11, 12:5
**advice** [2] - 23:4, 30:17
**advise** [2] - 30:19, 34:19
**advised** [2] - 7:25, 16:15
**advocate** [1] - 5:15
**afternoon** [6] - 3:9, 4:4, 4:23, 34:3, 34:23, 35:6
**agree** [6] - 3:23, 5:21, 9:10, 12:1, 29:6, 29:8
**agreed** [3] - 3:9, 8:10, 21:14
**agreeing** [1] - 9:10
**agreement** [3] - 7:21, 28:4, 34:5
**agrees** [1] - 2:16
**ahead** [1] - 7:18

**air** [1] - 27:20
**alert** [1] - 16:9
**alledgedly** [1] - 22:20
**allow** [10] - 8:2, 8:3, 8:22, 8:25, 9:20, 9:22, 19:17, 20:17, 28:1, 29:10
**allowed** [3] - 3:4, 3:18, 9:17
**alternates** [2] - 5:3, 5:16
**alternatives** [1] - 5:17
**Amendment** [2] - 31:20, 33:1
**AMERICA** [1] - 1:3
**amount** [3] - 13:15, 13:25, 14:4
**ample** [3] - 16:15, 17:14, 34:18
**announced** [1] - 32:3
**ano** [1] - 1:5
**anticipate** [2] - 17:3, 17:23
**anticipation** [1] - 4:16
**anyway** [3] - 7:18, 24:21, 28:21
**appear** [1] - 12:11
**APPEARANCES** [1] - 1:11
**appearances** [1] - 2:1
**appeared** [1] - 14:13
**applications** [1] - 4:6
**appreciate** [3] - 2:12, 20:17, 20:23
**approaching** [1] - 14:23
**appropriate** [5] - 4:1, 13:17, 19:6, 20:19, 33:9
**April** [2] - 7:24, 8:19
**argue** [2] - 22:12, 26:15
**argument** [1] - 28:21
**arise** [1] - 26:2
**arrangement** [1] - 33:22
**assert** [1] - 33:1
**asserting** [2] - 31:20, 31:23
**assess** [1] - 18:9
**assignment** [1] - 3:8
**Assistant** [1] - 1:15
**associated** [1] - 28:22
**Attorney** [1] - 1:12
**attorney** [3] - 21:22, 21:23, 27:15
**attorney-client/joint** [1] - 27:15
**Attorneys** [1] - 1:15
**authenticity** [3] - 11:20, 11:23, 12:1
**available** [4] - 23:25, 25:13, 32:8, 32:10
**aware** [3] - 15:21, 31:10, 31:16

**B**

**backup** [2] - 31:6, 32:6
**balance** [1] - 9:7
**ball** [2] - 2:5, 32:21
**balls** [1] - 27:20
**bank** [1] - 7:25
**bar** [1] - 29:25
**basis** [1] - 32:24
**Bear** [12] - 7:17, 7:19, 8:9, 8:21, 9:1, 9:3, 9:5, 9:9, 9:16, 10:20, 10:21, 21:14
**bears** [1] - 32:17
**Beattie** [3] - 21:14, 26:23, 27:3
**BEATTIE** [1] - 1:19

2

**BEFORE** [1] - 1:9
**begin** [1] - 6:4
**beginning** [2] - 16:23, 25:14
**behind** [1] - 18:18
**bell** [1] - 19:23
**Bella** [3] - 13:8, 13:11, 16:19
**BENTON** [1] - 1:12
**better** [2] - 3:2, 18:9
**between** [3] - 3:18, 4:7, 32:2
**beyond** [1] - 9:20
**bigger** [1] - 33:7
**bit** [6] - 3:13, 3:18, 4:22, 19:16, 27:21, 29:14
**blanks** [2] - 13:5, 19:14
**blind** [2] - 13:7, 17:2
**blind-sided** [2] - 13:7, 17:2
**BLOCK** [1] - 1:9
**book** [1] - 23:12
**Borg** [8] - 13:9, 13:11, 14:7, 14:13, 16:19, 16:20, 16:25, 17:22
**born** [1] - 5:8
**breadth** [1] - 27:18
**Brenner** [7] - 13:9, 13:12, 14:7, 14:13, 16:19, 16:20, 17:22
**Brenner's** [1] - 16:25
**BRIAN** [1] - 1:14
**briefly** [1] - 18:13
**bring** [2] - 7:4, 8:22
**bringing** [1] - 15:24
**broaching** [1] - 26:4
**broken** [1] - 18:22
**Brooklyn** [4] - 1:4, 1:16, 1:23, 5:8
**Brune** [10] - 12:19, 14:7, 17:8, 22:3, 23:2, 27:3, 29:13, 30:12, 32:22, 33:8
**BRUNE** [32] - 1:19, 5:19, 12:20, 12:24, 13:3, 13:8, 13:13, 13:22, 13:24, 17:9, 17:17, 17:25, 18:2, 18:13, 18:15, 19:1, 20:3, 23:17, 23:19, 23:23, 24:11, 25:4, 25:8, 26:5, 26:11, 27:9, 30:13, 31:18, 31:25, 32:9, 32:15, 34:24
**Brune's** [3] - 22:1, 29:19, 29:23
**BSAM's** [1] - 31:12
**bumping** [1] - 5:11
**bunch** [1] - 10:1
**burdened** [1] - 6:3
**Burton** [1] - 1:22
**business** [1] - 10:21
**Butswinkas** [2] - 11:25, 12:19
**BUTSWINKAS** [5] - 1:17, 5:21, 11:19, 11:24, 20:21

## C

**Cadman** [2] - 1:15, 1:22
**called-appearances** [1] - 2:1
**CAMPBELL** [1] - 1:12
**care** [1] - 19:5
**cars** [1] - 7:1
**case** [11] - 2:1, 2:2, 2:3, 16:23, 17:11, 19:16, 20:9, 22:22, 25:2, 29:15, 33:17

**CAT** [1] - 1:25
**Catherine** [1] - 21:4
**caution** [1] - 25:23
**cautious** [1] - 14:22
**center** [1] - 2:23
**certain** [1] - 19:25
**certainly** [5] - 10:13, 11:19, 15:20, 31:18, 32:9
**challenges** [1] - 6:2
**chance** [1] - 33:14
**changed** [1] - 11:8
**check** [1] - 6:1
**chilling** [1] - 34:15
**choir** [1] - 30:8
**chose** [1] - 31:12
**Cioff's** [1] - 9:4
**CIOFFI** [1] - 1:5
**Cioffi** [7] - 1:18, 7:8, 7:12, 7:18, 8:14, 9:24, 10:22
**Cioffi's** [1] - 6:16
**Circuit** [1] - 29:14
**circuit** [1] - 30:6
**circumstances** [4] - 21:7, 25:22, 27:23, 33:10
**claim** [1] - 22:10
**clear** [1] - 9:15
**clerk** [1] - 23:14
**client** [5] - 15:16, 21:10, 26:21, 27:21, 32:25
**client/joint** [1] - 27:15
**clients** [1] - 2:14
**close** [2] - 29:21, 33:11
**closed** [1] - 30:17
**closing** [4] - 19:3, 30:20, 32:2, 33:3
**closure** [1] - 29:13
**clubs** [3] - 6:13, 9:22, 10:1
**Code** [1] - 5:24
**collapsed** [1] - 31:5
**collateral** [3] - 7:13, 8:19, 9:12
**collective** [1] - 2:12
**color** [1] - 9:4
**comfort** [2] - 4:8, 20:1
**comfortable** [1] - 18:12
**coming** [4] - 3:16, 4:9, 11:21, 30:9
**committing** [1] - 6:18
**communicate** [1] - 16:2
**communicates** [1] - 16:3
**communicating** [1] - 16:21
**compelling** [1] - 19:21
**complete** [2] - 3:7, 34:23
**completed** [1] - 2:18
**comprising** [1] - 2:13
**concept** [1] - 22:6
**concern** [11] - 4:21, 13:11, 16:6, 19:25, 21:3, 21:16, 23:3, 26:3, 26:5, 30:9, 34:5
**concerned** [9] - 4:3, 7:20, 8:9, 12:10, 13:6, 19:3, 23:6, 26:1, 33:24
**concerns** [4] - 4:15, 17:8, 20:16
**condition** [1] - 6:17

**conference** [2] - 14:16, 14:25
**confident** [1] - 29:25
**confined** [1] - 12:14
**consciousness** [5] - 19:18, 19:19, 22:6, 28:22, 32:17
**consent** [3] - 7:17, 7:20, 8:21
**consented** [1] - 9:1
**considering** [1] - 19:10
**consistency** [1] - 25:15
**conspiracy** [1] - 6:18
**Constitution** [1] - 31:1
**constitutional** [1] - 32:10
**contact** [1] - 34:12
**contacted** [2] - 22:1, 24:23
**contacts** [2] - 16:4, 16:5
**contemplating** [1] - 21:4
**contend** [2] - 25:5, 25:6
**content** [1] - 25:21
**contest** [1] - 27:4
**contingencies** [1] - 3:6
**contradiction** [1] - 26:8
**control** [2] - 31:9, 31:13
**conversation** [1] - 15:9
**conversations** [2] - 14:10, 14:11
**cooperation** [1] - 3:22
**copy** [2] - 2:23, 23:12
**correct** [3] - 11:24, 20:21, 21:20
**correctly** [2] - 6:14, 14:8
**counsel** [29] - 5:18, 8:5, 11:16, 12:6, 15:8, 15:23, 16:7, 16:9, 16:22, 21:13, 21:15, 22:17, 23:4, 24:2, 24:20, 24:24, 24:25, 27:7, 27:23, 28:1, 29:16, 30:17, 30:19, 31:11, 31:12, 31:14, 34:12, 34:20, 34:21
**counseled** [2] - 30:2, 30:5
**country** [3] - 6:13, 9:21, 10:1
**couple** [3] - 16:14, 23:21, 32:19
**course** [10] - 3:19, 10:16, 18:11, 19:6, 19:24, 20:25, 25:24, 26:2, 27:25, 28:24
**Court** [1] - 1:22
**COURT** [1] - 1:1
**court** [3] - 2:1, 4:5, 22:18
**court's** [1] - 9:14
**court-case** [1] - 2:1
**Courthouse** [1] - 1:4
**cover** [2] - 8:3, 8:11
**covered** [3] - 26:12, 27:14
**crimes** [1] - 6:18
**critically** [1] - 15:18
**Curcio** [22] - 6:8, 11:2, 11:5, 18:4, 20:5, 21:2, 25:20, 25:25, 26:2, 26:6, 27:1, 28:24, 29:2, 29:10, 33:13, 33:21, 33:25, 34:2, 34:6, 34:11, 34:12, 34:23
**curious** [1] - 28:6
**cyberspace** [2] - 28:8, 28:17

## D

**dANE** [1] - 1:17
**dates** [1] - 24:22

**days** [2] - 32:5, 33:5
**de** [1] - 9:16
**deal** [11] - 3:5, 5:24, 10:8, 11:20, 19:17, 20:19, 20:20, 28:23, 33:7, 34:18
**dealing** [2] - 10:5, 33:12
**December** [2] - 7:15, 7:21
**decide** [1] - 20:23
**decided** [1] - 8:10
**deemed** [1] - 12:8
**deeply** [1] - 25:21
**defendant** [3] - 7:7, 15:13, 22:11
**Defendant** [3] - 1:17, 1:18, 1:20
**defendant's** [1] - 11:7
**defendants** [5] - 6:4, 12:10, 14:11, 16:24, 20:7
**Defendants** [1] - 1:6
**defense** [22] - 5:18, 8:5, 10:2, 11:16, 15:8, 15:20, 15:23, 16:7, 16:9, 18:15, 20:9, 22:10, 22:17, 23:4, 24:14, 24:16, 25:10, 26:13, 27:15, 27:18, 29:5, 29:16
**definitive** [1] - 10:11
**degree** [1] - 3:22
**delete** [6] - 28:7, 28:13, 28:16, 29:21, 32:1
**deleted** [2] - 28:5, 31:23
**deleting** [1] - 32:3
**deletion** [1] - 29:12
**Department** [1] - 16:3
**deposited** [1] - 7:25
**despite** [1] - 33:10
**determinations** [1] - 18:6
**devices** [2] - 19:13, 19:22
**difference** [1] - 32:2
**different** [1] - 29:14
**dig** [1] - 15:3
**diligently** [1] - 12:21
**dimension** [1] - 27:18
**direction** [1] - 34:22
**disappearance** [1] - 19:21
**discharge** [1] - 2:12
**discharged** [1] - 3:24
**disclosures** [2] - 9:4, 15:23
**discuss** [1] - 4:24
**discussed** [1] - 5:3
**dispel** [1] - 27:1
**disposal** [1] - 34:20
**dispose** [1] - 25:10
**distill** [1] - 29:2
**DISTRICT** [3] - 1:1, 1:1, 1:9
**document** [3] - 23:17, 23:25, 24:19
**documented** [1] - 15:19
**documents** [3] - 12:9, 13:19, 16:25
**dollars** [2] - 6:22, 6:25
**done** [6] - 2:12, 5:10, 12:14, 13:15, 33:16, 34:10
**double** [1] - 6:1
**doubt** [1] - 29:23
**down** [1] - 23:10
**downstairs** [1] - 2:25
**driving** [1] - 22:9

**drop** [1] - 32:20
**due** [1] - 29:12
**during** [13] - 6:17, 8:8, 10:8, 18:11, 18:21, 18:24, 19:5, 19:24, 20:25, 25:24, 26:2, 27:24, 28:24

### E

**e-mail** [21] - 21:8, 21:12, 21:13, 21:14, 21:24, 22:15, 22:16, 22:17, 22:18, 22:19, 22:23, 23:5, 23:9, 23:15, 23:16, 24:23, 25:22, 29:4, 31:12, 33:20, 34:6
**e-mails** [6] - 11:12, 15:13, 15:19, 17:1, 21:9, 22:5
**ease** [1] - 2:9
**East** [2] - 1:15, 1:22
**EASTERN** [1] - 1:1
**either** [2] - 15:6, 27:3
**eleven** [3] - 12:11, 12:18, 12:25
**elicit** [1] - 27:14
**emergencies** [1] - 3:6
**employer** [1] - 16:25
**employers** [1] - 13:19
**Enhanced** [1] - 7:13
**enormous** [2] - 14:4, 18:15
**entirely** [2] - 22:12, 26:12
**entities** [1] - 31:9
**equivalent** [1] - 16:4
**erase** [1] - 29:21
**ESQ** [4] - 1:17, 1:17, 1:19, 1:19
**essentially** [1] - 26:6
**establish** [1] - 25:17
**estate** [1] - 10:7
**esteemed** [1] - 29:25
**estimated** [1] - 5:6
**estimates** [1] - 5:7
**et** [1] - 1:5
**event** [1] - 29:14
**evidence** [8] - 6:16, 11:17, 14:17, 18:10, 19:7, 22:22, 24:5, 26:7
**executed** [1] - 7:21
**exercise** [1] - 6:2
**exercising** [1] - 15:7
**Exhibit** [3] - 22:25, 23:13, 26:21
**exhibit** [2] - 11:10, 23:12
**exhibits** [4] - 11:11, 11:20, 12:4, 18:8
**existence** [2] - 31:10, 31:16
**exists** [1] - 28:15
**expect** [3] - 4:20, 22:10, 22:11
**expecting** [1] - 3:25
**expended** [1] - 10:8
**expert** [1] - 28:9
**experts** [1] - 20:9
**explain** [1] - 33:9
**explanation** [1] - 33:9
**extent** [2] - 17:22, 32:18
**extra** [1] - 14:22

### F

**face** [1] - 23:24
**fact** [12] - 2:20, 7:6, 7:7, 8:8, 8:20, 9:3, 10:16, 12:10, 14:20, 19:7, 20:6, 26:8, 26:11, 27:9, 27:25
**facto** [1] - 9:16
**facts** [5] - 8:23, 24:1, 24:7, 26:9, 29:17
**factual** [3] - 7:11, 8:13, 13:25
**failed** [1] - 31:3
**fair** [3] - 10:13, 15:22, 28:25
**fairness** [1] - 20:7
**faith** [1] - 18:22
**false** [1] - 24:15
**famous** [1] - 22:18
**fancy** [1] - 6:25
**far** [7] - 4:25, 5:2, 10:24, 18:5, 33:20, 33:24, 34:1
**fast** [1] - 5:8
**Fax** [1] - 1:24
**Ferraris** [4] - 6:13, 9:21, 10:1, 10:3
**Fifth** [2] - 31:20, 33:1
**filed** [1] - 20:8
**filling** [1] - 2:6
**financial** [1] - 6:17
**fine** [5] - 4:11, 5:20, 17:25, 18:17, 35:3
**fingers** [1] - 20:18
**firm** [1] - 22:1
**first** [12] - 3:23, 6:11, 17:3, 17:6, 19:23, 21:19, 21:20, 25:12, 31:9, 32:20, 33:20, 34:5
**five** [6] - 5:4, 5:9, 5:14, 11:10, 16:12, 17:14
**flexibility** [2] - 20:15, 20:17
**Florida** [2] - 7:25, 8:16
**flush** [1] - 25:20
**flying** [1] - 6:7
**focused** [1] - 4:21
**folks** [6] - 2:8, 3:7, 5:1, 12:13, 14:3, 16:15
**follow** [2] - 4:16, 13:17
**follow-up** [1] - 4:16
**followed** [1] - 28:12
**following** [1] - 3:16
**forever** [1] - 33:4
**forth** [1] - 7:7
**forward** [1] - 24:19
**foundation** [1] - 11:14
**four** [5] - 5:4, 5:14, 11:10, 16:12, 17:14
**fourteen** [1] - 17:11
**frames** [1] - 20:14
**frankly** [1] - 25:1
**FREDERIC** [1] - 1:9
**free** [1] - 22:13
**Friday** [3] - 3:5, 3:13, 3:17
**front** [2] - 23:17, 23:18
**full** [1] - 29:10
**fulsome** [1] - 8:13
**Fund** [4] - 7:13, 14:9, 15:15, 15:17
**fund** [3] - 8:15, 13:14, 15:4

**funded** [1] - 13:14
**Funds** [1] - 31:5
**funds** [1] - 15:2
**fur** [1] - 6:7
**fuss** [1] - 26:18

## G

**g-mail** [7] - 28:4, 28:5, 28:10, 29:18, 31:16, 33:25, 34:6
**given** [3] - 20:22, 21:24, 26:11
**glad** [1] - 12:3
**Google** [2] - 28:19, 32:4
**Google's** [1] - 31:6, 32:3
**Government** [1] - 1:12
**government** [35] - 4:11, 5:15, 6:12, 7:12, 8:19, 9:23, 10:18, 15:19, 18:20, 18:23, 19:11, 19:17, 20:7, 20:8, 21:3, 21:11, 23:8, 23:13, 24:13, 25:12, 25:16, 26:14, 26:20, 27:11, 29:8, 29:16, 30:22, 31:3, 31:10, 31:16, 32:20, 32:25, 33:4
**government's** [8] - 11:3, 14:14, 15:5, 22:9, 22:22, 23:3, 24:4, 32:16
**great** [2] - 10:8, 34:8
**guess** [1] - 28:6
**guilt** [5] - 19:18, 19:20, 22:7, 28:22, 32:18
**gun** [1] - 22:19

## H

**half** [1] - 11:11
**hammered** [1] - 14:20
**hand** [1] - 23:14
**happy** [1] - 23:14
**hard** [3] - 2:10, 2:19, 35:5
**headed** [1] - 17:9
**heads** [2] - 11:16, 20:22
**hear** [4] - 12:8, 19:24, 23:2, 25:2
**heard** [1] - 18:13
**hearing** [2] - 18:7, 34:23
**hearings** [1] - 34:11
**helps** [1] - 15:22
**highlighted** [1] - 10:2
**himself** [2] - 7:8, 15:15
**holdings** [1] - 15:2
**homework** [1] - 3:7
**Honor** [31] - 5:19, 5:20, 6:16, 7:6, 10:9, 10:13, 11:6, 12:20, 13:25, 14:6, 15:5, 17:6, 17:10, 18:16, 20:3, 21:6, 21:19, 22:8, 23:1, 23:14, 23:19, 24:13, 25:8, 27:1, 27:9, 28:10, 31:25, 32:19, 33:8, 34:10, 34:24
**HONORABLE** [1] - 1:9
**hopefully** [4] - 2:16, 3:5, 4:2, 35:4
**hundred** [3] - 11:10, 34:10, 34:11
**hundreds** [1] - 21:9
**hurt** [1] - 33:25

## I

**idea** [2] - 22:5, 34:8
**identified** [1] - 15:19
**ILENIE** [1] - 1:14
**imagine** [1] - 11:14
**implication** [1] - 33:14
**importance** [2] - 18:9, 22:23
**important** [4] - 15:18, 22:21, 24:9, 26:15
**impossible** [1] - 28:8
**impression** [1] - 24:15
**improper** [1] - 30:19
**inadmissible** [1] - 26:13
**incendiary** [1] - 18:18
**including** [1] - 17:1
**income** [1] - 6:22
**incredibly** [1] - 18:18
**indefinite** [1] - 32:5
**independent** [2] - 34:20, 34:21
**indictment** [1] - 22:17
**inferences** [2] - 26:15, 26:16
**information** [3] - 9:12, 27:24, 32:7
**informed** [2] - 21:12, 21:23
**Innelli** [2] - 2:22, 2:25
**insert** [1] - 19:19
**instance** [1] - 19:23
**institutional** [1] - 13:14
**instructions** [3] - 8:5, 12:15, 19:7
**intelligence** [1] - 19:15
**intended** [1] - 7:12
**intentional** [1] - 28:16
**internal** [1] - 9:9
**introduce** [1] - 26:20
**inundate** [1] - 20:15
**invest** [1] - 15:16
**investigation** [1] - 21:10
**investment** [2] - 7:13, 7:24
**Investments** [1] - 14:19
**investments** [2] - 10:7, 15:2
**investor** [4] - 13:8, 14:8, 14:9, 14:25
**investors** [3] - 10:22, 13:14
**involved** [4] - 9:12, 21:17, 22:7, 25:21
**issue** [13] - 7:19, 8:4, 9:19, 18:21, 20:1, 25:9, 26:6, 27:1, 27:4, 27:22, 27:25, 30:18, 33:7
**issued** [1] - 16:24
**issues** [7] - 11:20, 11:22, 11:23, 26:1, 29:2, 29:11, 34:13
**items** [7] - 18:10, 19:9, 30:25, 31:7, 32:4, 32:23
**iterations** [1] - 14:14

## J

**JAMES** [1] - 1:13
**January** [2] - 15:1, 31:21
**JAROSLAW** [1] - 1:14
**Jennifer** [2] - 13:9, 13:22

**job** [1] - 12:14
**joint** [3] - 25:9, 26:13, 27:18
**jointly** [1] - 24:2
**joints** [1] - 6:20
**JUDGE** [1] - 1:9
**July** [2] - 7:24, 12:16
**jurors** [6] - 2:6, 2:18, 3:3, 3:15, 4:13, 12:4
**jury** [9] - 6:21, 8:4, 10:4, 18:22, 19:4, 22:12, 24:6, 24:15
**Justice** [2] - 16:2, 16:3
**justification** [1] - 30:4

## K

**KEELEY** [1] - 1:17
**keep** [1] - 6:5
**keeps** [1] - 6:7
**kick** [1] - 2:5
**kind** [2] - 12:1, 18:18
**knowing** [1] - 34:19
**known** [1] - 29:7
**knows** [5] - 4:7, 5:9, 15:8, 23:9, 24:6

## L

**land** [1] - 16:10
**large** [1] - 19:19
**last** [3] - 11:2, 12:11, 20:8
**latest** [2] - 2:22, 12:22
**law** [2] - 30:6, 34:16
**laws** [1] - 34:16
**lawyers** [2] - 3:22, 24:1
**learn** [1] - 15:3
**learned** [1] - 14:15
**leash** [1] - 33:5
**leave** [2] - 3:17, 20:4
**left** [1] - 18:3
**leg** [1] - 3:18
**legend** [1] - 23:15
**length** [2] - 5:16, 22:16
**lengthy** [2] - 23:18, 23:19
**letter** [3] - 11:7, 14:12, 29:24
**level** [2] - 4:8, 21:21
**license** [1] - 31:23
**lifestyle** [3] - 7:1, 10:6, 10:16
**light** [1] - 27:24
**limited** [3] - 15:9, 15:12, 20:13
**line** [1] - 29:6
**list** [15] - 3:8, 4:1, 4:4, 4:15, 6:8, 11:8, 11:10, 12:12, 12:17, 12:22, 12:24, 13:21, 14:14, 25:15, 35:5
**listen** [2] - 18:8, 19:16
**lives** [2] - 7:1, 14:18
**loan** [1] - 8:16
**lobby** [1] - 3:1
**look** [5] - 5:23, 7:11, 18:7, 19:8, 24:22
**looking** [1] - 13:20

# M

**mail** [29] - 21:8, 21:12, 21:13, 21:14, 21:24, 22:15, 22:16, 22:17, 22:18, 22:19, 22:23, 23:5, 23:9, 23:15, 23:16, 24:23, 25:22, 28:4, 28:5, 28:10, 29:4, 29:18, 31:12, 31:16, 33:20, 33:25, 34:6
**mails** [6] - 11:12, 15:13, 15:19, 17:1, 21:9, 22:5
**Main** [1] - 16:2
**maintained** [1] - 32:4
**maintains** [1] - 32:5
**major** [1] - 17:16
**man** [1] - 10:16
**mandated** [1] - 9:11
**manner** [1] - 33:15
**March** [2] - 15:14, 29:18
**MARGARET** [1] - 1:17
**massive** [1] - 19:10
**material** [5] - 17:17, 17:19, 17:22, 17:24, 19:11
**materialize** [1] - 5:13
**materials** [1] - 13:16
**Matt** [1] - 21:9
**matter** [5] - 12:2, 18:4, 19:8, 20:5, 25:23
**matters** [3] - 11:2, 11:5, 11:6
**McGarrigal** [6] - 21:10, 21:12, 22:1, 24:23, 25:14, 25:16
**McGarrigal's** [4] - 24:2, 24:20, 24:25, 31:11
**McGovern** [45] - 1:13, 4:11, 5:15, 6:14, 6:15, 6:23, 7:6, 7:15, 7:22, 8:12, 8:18, 9:3, 9:14, 9:23, 10:2, 10:7, 10:13, 10:18, 11:5, 11:13, 11:25, 14:2, 20:6, 20:11, 21:1, 21:6, 21:19, 22:8, 22:16, 22:21, 23:1, 24:13, 24:18, 25:7, 26:19, 28:7, 28:9, 28:16, 28:19, 29:1, 30:11, 32:19, 33:3, 34:8, 35:2
**mean** [1] - 24:8
**means** [2] - 2:8, 3:11
**mechanical** [1] - 1:25
**meetings** [1] - 14:15
**member** [1] - 29:25
**mention** [2] - 10:15, 15:12
**mentioned** [2] - 10:3, 18:20
**message** [1] - 3:17
**might** [2] - 5:4, 27:24
**million** [6] - 6:10, 6:22, 6:25, 7:3, 8:15, 10:25
**mind** [1] - 27:10
**mindful** [2] - 5:23, 30:13
**misled** [1] - 32:22
**Miss** [32] - 12:19, 13:18, 13:20, 14:7, 16:5, 16:10, 16:25, 17:8, 17:22, 17:23, 21:11, 21:14, 21:22, 21:23, 21:24, 22:1, 22:2, 23:2, 26:20, 26:22, 27:3, 27:12, 29:7, 29:9, 29:13, 29:19, 29:23, 30:12, 32:22, 32:23, 33:8
**miss** [2] - 14:13, 16:20

**missing** [4] - 18:5, 18:11, 32:8, 32:14
**mitigated** [1] - 22:24
**mix** [1] - 27:10
**money** [7] - 8:11, 8:14, 8:23, 8:24, 9:7, 15:15, 15:16
**monies** [1] - 6:10
**months** [2] - 17:12, 32:21
**morning** [2] - 5:19, 14:6
**morning's** [1] - 2:15
**most** [2] - 17:10, 27:13
**motion** [1] - 20:8
**motions** [1] - 6:9
**motive** [6] - 7:5, 8:4, 8:23, 8:24, 9:19, 10:24
**motives** [1] - 6:18
**moved** [1] - 20:8
**MR** [53] - 4:11, 5:15, 5:21, 6:15, 6:23, 7:6, 7:15, 7:22, 8:12, 8:18, 9:3, 9:14, 9:23, 10:2, 10:7, 10:13, 10:18, 11:5, 11:13, 11:19, 11:24, 11:25, 14:6, 14:24, 15:11, 16:1, 16:9, 16:13, 16:20, 17:5, 17:21, 20:6, 20:11, 20:21, 21:1, 21:6, 21:19, 22:8, 22:16, 22:21, 23:1, 24:13, 24:18, 26:19, 28:9, 28:16, 28:19, 29:1, 30:11, 32:19, 33:3, 34:8, 35:2
**MS** [30] - 5:19, 12:24, 13:3, 13:8, 13:13, 13:22, 13:24, 17:9, 17:17, 17:25, 18:2, 18:13, 18:15, 19:1, 20:3, 23:7, 23:19, 23:23, 24:11, 25:4, 25:8, 26:5, 26:11, 27:9, 30:13, 31:18, 31:25, 32:9, 32:15, 34:24
**mystery** [1] - 31:20

# N

**naked** [1] - 19:21
**name** [1] - 21:5
**necessarily** [3] - 19:23, 20:24, 31:22
**necessary** [2] - 14:4, 34:22
**need** [14] - 4:19, 6:4, 7:1, 8:9, 8:23, 9:9, 10:23, 14:2, 14:21, 23:5, 25:16, 25:20, 33:21, 34:25
**never** [3] - 5:7, 9:23, 10:3
**NEW** [1] - 1:1
**new** [2] - 12:11, 27:7
**New** [3] - 1:4, 1:16, 1:23
**next** [2] - 16:14, 17:14
**night** [1] - 3:4
**Nina** [1] - 26:22
**NINA** [1] - 1:19
**note** [2] - 18:5, 18:24
**noted** [2] - 2:1, 21:3
**notes** [2] - 7:11, 17:1
**nothing** [2] - 26:19, 30:19
**noticed** [2] - 14:12, 14:16
**notified** [1] - 31:12
**noting** [1] - 16:24
**November** [3] - 7:14, 22:2, 31:11
**nowhere** [1] - 30:3
**nugatory** [1] - 34:5

**number** [4] - 9:16, 13:23, 28:12

# O

**o'clock** [7] - 3:4, 3:10, 4:3, 4:5, 4:9, 34:4, 35:4
**objection** [2] - 11:17, 12:5, 12:7
**obviously** [7] - 2:10, 3:12, 5:12, 6:24, 6:25, 11:8, 11:20
**October** [5] - 1:5, 21:24, 22:1, 24:1, 24:23
**OF** [3] - 1:1, 1:3, 1:8
**offer** [6] - 6:16, 8:20, 10:19, 19:16, 20:1, 30:4
**office** [2] - 29:19, 32:9
**officers** [1] - 2:13
**omitted** [1] - 23:13
**omitting** [1] - 27:11
**one** [19] - 2:24, 5:25, 7:23, 13:6, 13:21, 14:15, 14:24, 15:13, 19:8, 21:8, 22:4, 22:15, 22:16, 24:9, 25:4, 27:9, 29:22, 33:20
**one-on-one** [1] - 14:15
**one-third** [1] - 7:23
**ones** [1] - 13:24
**Open** [1] - 2:1
**open** [1] - 3:13
**opening** [4] - 10:15, 18:19, 18:24, 19:2
**opportunity** [8] - 6:13, 7:4, 15:6, 16:7, 17:14, 17:23, 19:3, 34:16
**oppose** [1] - 11:8
**opposite** [1] - 25:6
**order** [1] - 33:11
**ordinarily** [3] - 13:15, 13:25, 18:17
**outstanding** [1] - 2:11
**overextended** [1] - 7:8
**own** [3] - 22:13, 24:19, 31:14

# P

**pad** [2] - 18:5, 18:24
**pages** [1] - 4:20
**paint** [1] - 9:23
**Palomar** [2] - 14:19, 16:4
**panned** [1] - 5:7
**papers** [9] - 6:14, 7:7, 9:25, 12:13, 20:10, 20:14, 20:24, 30:4, 30:16
**part** [6] - 3:2, 8:18, 16:23, 22:6, 25:12, 26:14
**particular** [4] - 15:9, 15:10, 18:10, 19:13
**particularly** [1] - 21:17
**party** [2] - 29:20, 29:22
**passed** [1] - 31:15
**password** [2] - 28:11
**pATRICK** [1] - 1:13
**PC** [3] - 18:5, 18:21, 18:24
**pending** [1] - 17:11
**people** [6] - 3:8, 10:5, 13:1, 13:6, 14:3,

35:6
**per** [1] - 33:13
**perceived** [1] - 14:16
**peremptories** [1] - 5:23
**peremptory** [2] - 5:25, 6:2
**period** [6] - 6:17, 8:3, 8:8, 10:9, 31:15, 32:5
**permissive** [1] - 9:11
**permitted** [3] - 10:18, 22:22, 34:12
**perpetuity** [1] - 28:17
**person** [6] - 4:20, 6:21, 6:25, 9:16, 16:18
**perspective** [1] - 11:3
**phone** [1] - 26:24
**pick** [2] - 2:25, 3:23
**picture** [1] - 8:13
**piece** [2] - 22:13, 22:21
**plain** [1] - 27:12
**planning** [1] - 16:18
**play** [1] - 6:20
**Plaza** [1] - 1:15, 1:22
**pledge** [7] - 7:13, 7:18, 7:20, 8:11, 9:4, 10:19, 10:20
**pledged** [4] - 6:10, 7:16, 8:14, 8:20
**point** [4] - 23:24, 25:15, 30:23, 31:5
**pointed** [3] - 14:8, 15:1, 29:24
**policies** [1] - 9:10
**policy** [1] - 32:3
**pose** [1] - 13:10
**position** [4] - 9:15, 18:9, 30:23, 32:17
**possibility** [1] - 25:24
**possible** [3] - 4:16, 17:5, 25:20
**possibly** [4] - 2:20, 26:10, 30:18, 34:23
**potential** [2] - 9:12, 30:7
**potentially** [1] - 13:3
**power** [1] - 14:20
**practical** [1] - 17:4
**preclude** [1] - 20:9
**preempt** [1] - 11:6
**prepared** [4] - 5:20, 12:21, 12:23, 34:19
**preparing** [1] - 12:15
**present** [4] - 17:20, 20:2, 24:15, 26:7
**presented** [1] - 18:15
**preservation** [1] - 33:11
**preserved** [3] - 30:21, 30:25, 32:9
**presumably** [2] - 4:4, 34:4
**pretty** [1] - 12:14
**prime** [2] - 15:2, 15:4
**printed** [1] - 23:25
**prints** [1] - 24:24
**privilege** [12] - 25:10, 26:13, 27:15, 27:19, 30:14, 30:15, 30:24, 31:20, 31:24, 32:13, 33:1, 33:2
**privileged** [4] - 26:12, 26:18, 26:19, 29:19
**probative** [1] - 30:18
**problem** [10] - 9:9, 13:2, 13:10, 14:23, 17:19, 18:16, 19:1, 24:12, 25:4, 27:6
**problematic** [1] - 17:11

**problems** [4] - 4:2, 11:15, 26:2
**procedurally** [1] - 2:17
**PROCEEDINGS** [1] - 1:8
**Proceedings** [1] - 1:25
**process** [8] - 2:16, 5:12, 16:1, 27:5, 28:3, 28:21, 28:25, 33:21
**produce** [7] - 17:24, 21:14, 23:10, 24:10, 24:11, 30:25, 32:23
**produced** [10] - 1:25, 22:13, 24:2, 24:7, 24:21, 25:1, 26:25, 27:22, 31:17, 31:19
**producing** [2] - 19:11, 24:20
**production** [4] - 21:8, 22:24, 24:22, 25:22
**professional** [1] - 3:21
**professionals** [1] - 2:11
**promptly** [1] - 17:18
**prompts** [1] - 28:12
**pronounces** [1] - 21:5
**proof** [1] - 18:18
**proper** [2] - 8:4, 33:15
**propose** [1] - 29:6
**proposed** [4] - 11:10, 12:16, 22:25, 27:14
**proposes** [2] - 23:8, 25:12
**prosecute** [1] - 32:25
**prospective** [3] - 2:18, 17:15, 18:10
**prove** [1] - 25:13
**provider** [2] - 29:20, 29:23
**publicly** [1] - 32:3
**pull** [1] - 23:10
**purpose** [1] - 11:21
**purposes** [1] - 28:24
**pursuant** [2] - 30:17, 31:1
**pursue** [1] - 31:3
**push** [1] - 27:21
**put** [6] - 2:8, 5:4, 7:9, 23:4, 28:11, 33:4
**puts** [1] - 18:17

## Q

**questionnaire** [2] - 3:20, 3:21
**questionnaires** [3] - 2:6, 2:18, 35:5
**questions** [6] - 4:13, 4:17, 4:23, 5:1, 6:9, 15:1
**quickly** [2] - 2:20, 27:5
**quite** [1] - 13:3
**quoted** [1] - 22:16

## R

**raise** [1] - 20:6
**raised** [1] - 20:12
**raises** [1] - 14:25
**RALPH** [1] - 1:5
**rather** [2] - 3:15, 3:17
**Ray** [1] - 25:13
**re** [1] - 21:10
**reach** [2] - 4:2, 33:4

**reaches** [1] - 29:15
**read** [2] - 6:14, 23:22
**real** [5] - 10:7, 19:20, 22:19
**realistic** [1] - 14:23
**realistically** [1] - 5:9
**realize** [1] - 6:24
**really** [11] - 2:10, 3:20, 8:25, 9:19, 13:2, 18:9, 18:17, 19:12, 21:17, 27:2, 29:15
**reason** [4] - 19:21, 29:23, 30:1, 30:3
**reasonable** [3] - 3:10, 6:5, 31:13
**reasons** [1] - 10:21
**rebut** [2] - 22:10, 22:23
**received** [4] - 12:12, 13:18, 16:25, 23:12
**recipient** [1] - 15:13
**recommended** [1] - 15:16
**record** [3] - 15:5, 21:20
**recorded** [1] - 1:25
**redeem** [2] - 8:8, 10:25
**redeemed** [1] - 8:18
**redemption** [2] - 7:3, 7:23
**Redlich** [6] - 21:4, 21:6, 21:24, 27:12, 29:3, 29:7
**Redlich's** [4] - 21:22, 21:23, 26:8, 29:9
**Redolich** [4] - 21:11, 22:3, 26:20, 26:22
**refers** [2] - 22:17, 29:13
**refused** [1] - 7:17
**relate** [1] - 13:16
**relates** [1] - 29:10
**relevancy** [2] - 11:22, 18:9
**relevant** [14] - 6:17, 8:3, 8:10, 8:24, 9:2, 9:7, 9:13, 9:19, 10:8, 10:9, 17:1, 19:10, 21:17, 21:19
**remain** [1] - 28:17
**remove** [1] - 29:22
**render** [1] - 34:5
**Reporter** [1] - 1:22
**representation** [1] - 9:15
**representations** [1] - 29:24
**representative** [3] - 13:8, 13:13, 14:9
**represented** [1] - 15:14
**requires** [1] - 3:22
**resided** [1] - 23:9
**residual** [1] - 4:23
**resolve** [1] - 29:4
**respect** [12] - 4:16, 10:19, 11:15, 13:18, 14:7, 14:22, 23:5, 26:6, 29:3, 29:12, 31:4, 33:22
**respond** [1] - 32:20
**responded** [2] - 11:7, 20:20
**responsibilities** [1] - 2:13
**responsibility** [1] - 21:21
**rest** [1] - 5:4
**restrictions** [1] - 7:10
**result** [2] - 27:7, 31:8
**reveal** [1] - 10:22
**reversal** [1] - 33:13
**revisit** [2] - 19:25, 34:3
**Richard** [1] - 32:23

**rights** [3] - 2:14, 28:1, 32:11
**rings** [1] - 19:23
**rolling** [1] - 32:24
**room** [1] - 3:18
**root** [1] - 13:16
**rule** [4] - 19:9, 26:1, 28:23, 34:1
**rulings** [1] - 10:11

## S

**safely** [1] - 2:24
**SANO** [1] - 1:14
**save** [1] - 11:2
**scenario** [1] - 25:20
**scheduled** [1] - 16:10
**se** [1] - 33:13
**search** [1] - 32:21
**SEC** [2] - 21:10, 31:19
**second** [1] - 12:7
**secure** [1] - 8:16
**security** [1] - 7:25
**see** [14] - 3:6, 4:14, 5:24, 6:4, 10:10, 17:9, 23:20, 23:24, 29:1, 29:2, 29:15, 34:21, 35:4, 35:6
**seeking** [3] - 6:16, 8:19, 26:20
**send** [1] - 20:24
**sense** [1] - 10:14
**sensitive** [1] - 2:20
**sent** [1] - 14:1
**sentences** [1] - 23:21
**series** [1] - 14:1
**served** [1] - 30:22
**server** [4] - 31:6, 32:4, 32:6
**set** [1] - 7:7
**seven** [1] - 3:4
**shed** [1] - 27:24
**shoe** [1] - 17:15
**shooting** [2] - 13:5, 19:14
**short** [1] - 4:21
**shove** [1] - 27:22
**show** [3] - 6:18, 10:8, 10:24
**shown** [1] - 2:11
**sided** [2] - 13:7, 17:2
**sign** [1] - 28:10
**significant** [3] - 13:1, 13:4, 25:4
**silently** [1] - 26:7
**similarly** [1] - 14:18
**simply** [1] - 26:13
**SINCLAIR** [10] - 1:13, 14:6, 14:24, 15:11, 16:1, 16:9, 16:13, 16:20, 17:5, 17:21
**Sinclair** [1] - 28:6
**single** [1] - 20:14
**sit** [3] - 19:24, 26:7, 27:19
**sitting** [1] - 29:19
**situation** [3] - 28:4, 29:3, 33:20
**six** [8] - 5:4, 5:6, 5:14, 5:15, 5:20, 5:22, 5:25, 17:14
**smoking** [1] - 22:19
**snapping** [1] - 20:18

**so-called** [3] - 11:1, 27:18, 28:1
**solid** [1] - 35:5
**someone** [1] - 15:10
**someplace** [1] - 28:15
**somewhat** [1] - 14:20
**soon** [1] - 16:6
**sort** [8] - 2:8, 4:8, 5:17, 8:12, 11:5, 23:4, 32:13, 33:14
**sought** [1] - 31:18
**sounds** [2] - 4:11, 33:18
**space** [1] - 3:13
**speaker** [1] - 14:24
**specifically** [1] - 15:14
**stand** [1] - 30:23
**standpoint** [1] - 33:13
**start** [1] - 34:17
**state** [1] - 27:11
**statement** [1] - 18:20
**statements** [2] - 10:15, 18:25
**STATES** [3] - 1:1, 1:3, 1:9
**states** [1] - 29:7
**States** [2] - 1:12, 16:10
**Stearns** [9] - 7:19, 8:9, 8:21, 9:1, 9:3, 9:5, 9:9, 9:17, 10:21
**Stearns'** [1] - 21:14
**stenography** [1] - 1:25
**steps** [1] - 29:21
**Sterns** [2] - 7:17, 10:20
**still** [4] - 6:9, 9:21, 28:15
**stipulate** [2] - 25:17, 29:9
**stipulation** [3] - 12:1, 25:11, 29:4
**strikes** [1] - 7:3
**sub** [2] - 15:2, 15:4
**subject** [1] - 17:16
**submission** [1] - 7:11
**subpoena** [3] - 30:22, 31:19, 33:10
**subpoenas** [3] - 13:17, 14:1, 16:24
**subsequently** [1] - 15:16
**substance** [1] - 15:4
**sufficient** [1] - 10:25
**suggesting** [1] - 24:18
**suggestion** [1] - 22:23
**Sulzer** [1] - 1:22
**summer** [2] - 12:21, 13:16
**suppress** [1] - 24:5
**surfaces** [1] - 25:25
**surprises** [1] - 17:16
**surrounding** [1] - 21:8
**sUSAN** [1] - 1:19
**suspect** [1] - 27:7
**Switzerland** [3] - 14:19, 15:25, 16:4

## T

**tablet** [2] - 18:5, 18:21
**Tannin** [18] - 1:20, 21:9, 22:11, 23:25, 24:1, 24:3, 24:5, 24:7, 24:18, 24:24, 26:7, 27:2, 27:7, 29:10, 30:5, 30:21, 31:9, 34:9
**Tannin's** [3] - 21:13, 23:9, 30:16

**tendency** [1] - 33:24
**tenor** [1] - 12:14
**tension** [1] - 25:25
**terms** [6] - 3:8, 9:10, 12:15, 13:7, 15:22, 19:18
**terribly** [4] - 7:20, 9:2, 9:13, 19:10
**testify** [6] - 14:10, 14:14, 21:7, 21:12, 26:21, 26:22
**testimony** [10] - 10:19, 15:9, 25:3, 25:13, 25:17, 26:8, 26:11, 27:13, 29:9
**Thanksgiving** [2] - 5:11, 5:12
**THE** [1] - 1:9
**The court** [86] - 2:2, 2:4, 2:13, 4:12, 5:18, 5:22, 6:19, 6:24, 7:9, 7:17, 7:23, 8:17, 8:22, 9:6, 9:18, 9:25, 10:4, 10:10, 10:14, 10:23, 11:9, 11:14, 11:22, 12:3, 12:23, 13:1, 13:5, 13:11, 13:20, 13:23, 14:2, 14:21, 15:8, 15:22, 16:6, 16:11, 16:15, 17:2, 17:7, 17:13, 17:19, 18:1, 18:3, 18:14, 18:23, 19:5, 20:4, 20:10, 20:13, 20:22, 21:2, 21:7, 22:4, 22:15, 22:19, 22:25, 23:2, 23:16, 23:21, 24:10, 24:12, 24:16, 25:2, 25:5, 25:19, 26:10, 26:17, 27:5, 27:17, 28:14, 28:18, 28:21, 29:16, 29:24, 30:8, 30:12, 31:15, 31:22, 32:7, 32:12, 32:16, 33:2, 33:19, 34:15, 34:25, 35:3
**theory** [4] - 6:19, 7:9, 24:4, 24:8
**therefore** [1] - 30:17
**thinking** [1] - 5:4
**thinks** [1] - 18:22
**third** [7] - 7:23, 29:20, 29:22
**three** [7] - 4:3, 4:5, 4:9, 10:1, 34:3, 34:11, 35:4
**Thursday** [14] - 3:3, 3:4, 3:9, 3:12, 3:15, 4:3, 4:7, 4:9, 4:22, 34:3, 34:17, 34:21, 35:4, 35:6
**timeline** [1] - 29:8
**Tinnan's** [1] - 15:13
**today** [4] - 2:5, 6:7, 11:4, 28:25
**together** [2] - 4:23, 26:25
**tomorrow** [2] - 2:24, 3:2
**took** [2] - 9:6, 29:21
**total** [2] - 7:24, 12:25
**totally** [1] - 9:14
**transcript** [1] - 1:25
**TRANSCRIPT** [1] - 1:8
**tremendous** [2] - 13:15, 13:25
**trial** [17] - 5:16, 10:11, 13:17, 14:1, 17:6, 18:11, 18:21, 19:6, 19:20, 19:24, 20:25, 25:24, 26:3, 27:25, 28:24, 30:22, 34:17
**true** [2] - 26:17, 31:25
**truth** [1] - 19:8
**try** [9] - 2:8, 2:19, 3:7, 3:14, 5:4, 6:7, 25:19, 29:1, 33:5
**trying** [6] - 15:3, 18:16, 24:5, 24:15, 24:16, 33:7
**Tuesday** [3] - 4:19, 6:3, 34:17
**turn** [2] - 16:3, 20:17
**turned** [5] - 2:19, 17:18, 17:21, 22:3,

22:4
  **turning** [1] - 29:3
  **two** [15] - 9:16, 13:6, 13:10, 13:24, 14:3, 15:2, 15:11, 17:3, 17:6, 17:10, 19:9, 21:2, 31:4, 31:8
  **type** [2] - 12:2, 23:4

## U

  **U.S** [3] - 1:4, 1:15, 31:1
  **ultimately** [2] - 22:2, 32:24
  **umbrella** [1] - 32:13
  **under** [4] - 26:12, 28:12, 32:13, 33:10
  **undercut** [1] - 24:8
  **unfortunately** [2] - 14:18, 16:2
  **UNITED** [3] - 1:1, 1:3, 1:9
  **United** [2] - 1:12, 16:10
  **unless** [2] - 6:3, 19:20
  **unlikely** [1] - 27:16
  **unreasonable** [1] - 30:10
  **untoward** [2] - 3:12, 4:1
  **up** [16] - 2:25, 4:6, 4:16, 5:11, 5:24, 11:16, 12:6, 13:17, 18:21, 20:22, 24:6, 24:14, 27:10, 27:20, 31:6, 32:5
  **urging** [2] - 24:19, 24:25

## V

  **vacation** [1] - 16:21
  **valid** [1] - 27:14
  **version** [2] - 29:18, 29:20
  **vet** [1] - 34:13
  **vetted** [1] - 29:16
  **via** [1] - 25:13
  **voice** [1] - 14:25
  **voluntarily** [1] - 22:13
  **voluntary** [1] - 22:24

## W

  **wait** [2] - 31:12, 32:21
  **waive** [4] - 27:2, 28:1, 30:13, 30:14
  **waived** [1] - 30:24
  **waiver** [1] - 29:10
  **walk** [1] - 20:11
  **wants** [1] - 6:12
  **warrant** [1] - 32:21
  **wasted** [1] - 12:24
  **wealthy** [2] - 10:5, 10:16
  **Wednesday** [1] - 3:3
  **week** [4] - 3:16, 16:12, 17:3, 20:8
  **weeks** [5] - 5:6, 5:9, 16:14, 17:6, 17:14
  **whole** [2] - 14:1, 24:4
  **whooped** [2] - 24:6, 24:14
  **willing** [2] - 16:17, 27:2
  **willingness** [1] - 30:18
  **wish** [2] - 11:3, 16:8
  **wishes** [1] - 8:5
  **withheld** [1] - 30:25

  **witness** [7] - 11:8, 12:11, 14:14, 21:4, 25:15, 25:16, 27:3
  **witnesses** [6] - 12:11, 12:16, 12:20, 15:20, 17:15, 18:8
  **word** [2] - 2:22, 29:21
  **works** [1] - 14:19
  **world** [1] - 20:15
  **worried** [1] - 33:13
  **worry** [2] - 11:23, 14:3
  **worth** [1] - 16:24
  **worthless** [1] - 8:1
  **Wu** [8] - 13:9, 13:18, 13:20, 13:22, 14:18, 16:5, 16:10, 17:23

## Y

  **year** [2] - 6:22, 10:20
  **years** [2] - 5:7, 31:4
  **yesterday** [1] - 21:22
  **YORK** [1] - 1:1
  **York** [3] - 1:4, 1:16, 1:23
  **yourselves** [1] - 3:24