1

1
2                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
3   - - - - - - - - - - - - - - X
                                :
4   UNITED STATES of AMERICA
                                        08-CR-415
5        Plaintiff,

6           -against-           :
                                    United States Courthouse
7
                                    Brooklyn, New York
8   RALPH CIOFFI,
    MATTHEW TANNIN
9        Defendants.            :
                                    August 5, 2009
10  - - - - - - - - - - - - - - X    Eleven o'clock a.m.

11       TRANSCRIPT OF CRIMINAL CAUSE for STATUS CONFERENCE
              BEFORE THE HONORABLE FREDERIC BLOCK
12                  UNITED STATES DISTRICT JUDGE

13

    ATTORNEYS FOR GOVERNMENT:
14   BENTON CAMPBELL
     United States Attorney
15   BY:  ILENE JAROSLAW
          JAMES McGOVERN
16        PATRICK SINCLAIR
     Assistant United States Attorneys
17   271 Cadman Plaza East
     Brooklyn, New York 11201
18
     ATTORNEY FOR DEFENDANTS:
19   WILLIAMS & CONNOLLY LLP
     725 Twelfth Street, N.W.
20   Washington, D.C. 20005
     BY: DANA BUTSWINKAS, ESQ.
21       MARGARET KEELEY, ESQ.
         EDWARD LITTLE, ESQ.
22       For:  Defendant Cioffi

23   ATTORNEY FOR DEFENDANT:
     BRUNE & RICHARD LLP
24   80 Broad Street
     New York, New York 10*004
25   BY:   SUSAN BRUNE, ESQ.
           NINA BEATTIE, ESQ.

MARSHA DIAMOND, C.S.R.
OFFICIAL COURT REPORTER

2

1           For:  Defendant Tannin

2     ALSTON & BIRD LLP
      90 Park Avenue
3     New York, New York 10016
      BY:  ANDREW BOXER, ESQ.
4           For: Shelly Bergman

5    Court Reporter:
     Marsha Diamond
6    225 Cadman Plaza East
     Brooklyn, New York
7    TEL: (718) 613-2489;  FAX: (718) 613-2369

8       Proceedings recorded by mechanical stenography,

9    transcript produced by CAT.

10             THE CLERK: United States versus Cioffi.

11             MS. KEELEY: Good morning, Your Honor.

12             MR. McGOVERN: James McGovern, on behalf of the

13   United States.

14             THE COURT:  The usual cast of characters are

15   standing in front of me.

16             MR. MCGOVERN: Mr. Sinclair.

17             MS. JARASLOW: Ilene Jaraslow, good morning,

18   Your Honor.

19             THE COURT:  It is not the usual cast of characters.

20   I'm missing Mr. -- Ms. Keeley, you are standing in his shoes.

21             MS. KEELEY:  I am standing in my own shoes but in

22   his place, yes.

23             MS. BRUNE: Susan Brune and Nina Beattie, from Brune

24   & Richard.

25             THE COURT:  And we have the subpoena situation.

1   Somebody's here from that law firm as well. We will take care

2   of that after we finish with our other --

3           MS. KEELEY:  Your Honor, I think we may have a

4   compromise on that.

5           THE COURT: What I have in on my hit list today is

6   really to continue to monitor the issue of jury questionnaire

7   and continue to be pressed by Mr. Cioffi's attorney to make a

8   determination that the insider trading count should be

9   dismissed.  That is what I have to talk about today.

10          MR. McGOVERN:  I think that pretty much sums it up.

11          THE COURT:  And then I'll not be seeing you folks

12  until some time in September as the song was written:  "See

13  You In September"; does anybody know who wrote that song?

14          You spend too much time on the law.

15          MS. KEELEY:  You can at least let us know, Your

16  Honor.

17          THE COURT:  We will google that and we will set a

18  date to come back in September, and I think you folks have

19  been very cooperative, and I hope you share my thoughts that

20  by staging this and by having you come back periodically is,

21  hopefully, useful in terms of preparing.

22          Having said that, let's talk about the jury

23  questionnaire. I don't know whether or not you have made any

24  progress but I have taken a look at it and I have some

25  thoughts that I will share with you. I think that this type of

4

1    case lends itself to a jury questionnaire.  I think that we

2    should go with that but the questions that have been

3    propounded by the defendant, I think, are in a number of

4    circumstances too broad.  Let me give you my take on that.

5    Maybe that will help you, so when I see you in September we

6    will have the questions buttoned down.

7            I'll give you the benefit of my notes, but let me

8    see whether you can take some notes as we go along, unless

9    there's something you want to say to me first.

10            Have you had any further progress since I received a

11    note from you, Mr. Sinclair?

12            MR. SINCLAIR:  We did. We did.  We met yesterday, as

13    a matter of fact, Your Honor, and we were able to express to

14    each other our respective views on the propriety of the use of

15    the jury questionnaire, as well as specific questions that are

16    raised in there, and this morning we circulated to defense

17    counsel a copy of the government's proposed questionnaire that

18    reflected our comments from yesterday, reflected our

19    discussions from yesterday and more importantly, reflects the

20    format used by the Court in its previous five or six trials

21    that it's used a questionnaire for.

22            THE COURT:  I'm not going to make a definitive

23    determination.  I don't want to have to expend an enormous

24    amount of judicial resources to micromanage something that

25    would be counterintuitive.

5

1          Let me give you a brief take here.  Questionnaire

2    five asks whether or not the jurors heard or read or had seen

3    any other case that appears to be like this case.

4          I think that is too broad.  I think that is a

5    problematic question and I'm not going to go over that.

6          Question eight:  Have you or anyone in your family

7    ever owned a business?

8          If so, what type of business?

9          Do you consider the business to have been a success?

10         I'm not so sure what the relevance is, but I am not

11   comfortable with that.  I think that is overbroad.

12         Question nine:  Also, have you ever felt taken

13   advantage of in a business dealing?

14         An unfortunate choice of words, and I don't think

15   that's a proper question.

16         Number 12:  Have you, a close friend or family

17   member ever lost money on an investment?

18         If yes, what happened?

19         Who do you blame for the loss?

20         I think that is too broad.  I am going to suggest

21   how we can collapse these three into two questions in a few

22   moments.

23         13:   Are you covered by a pension plan provided by

24   a current or former employer?

25         I don't know.  Just about everybody has a pension

6

1    plan, and I guess the vast majority of jurors would say, yes,

2    and what do you make of that?  That is something that should

3    disqualify them from being a juror?  It just seems like that

4    is not necessary.

5              15:  Have you taken any courses or had any training

6    in business, or finance, for example, the following areas, and

7    then you identify the long list, and I think that is not

8    necessary. I think that's too intrusive, and they should not

9    be required to respond to each of those. Way too detailed.

10             25:  Who makes the day-to-day financial decisions?

11             I don't understand what the relevancy is to that.

12             26:  Have you ever invested in the stock market? Yes

13   or no?

14             If yes:  Have you stopped doing it in the last five

15   years?

16             If you have stopped doing so in the last five years,

17   please explain.

18             I think that is too broad.  I don't see really where

19   that is close to the mark.

20             27:  Do you have a stock broker or an investment

21   advisor? Yes or no?

22             If yes:  How often do you speak with him or her?

23             I think that that's also a question of relevancy.

24             29:  Have you received a prospectus or similar legal

25   document describing a prospective investment?  Yes no?

1          If yes:  Did you read the prospectus or similar

2 document?

3          Did you make the investment?

4          I think that is overly broad.

5          Here is what I suggest, that you replace questions

6 nine 12, 26, 27, 28, and 30 with this question:

7          Have you, or a family member, or a close friend ever

8 had a bad experience with an investment in the stock market or

9 a stock broker or investment advisor?

10          If so, please describe.

11          They can explain it, you know, in a sentence or two

12 what their problem was.

13          Replace question 50 with this one:  Have you had any

14 training in business or finance?

15          If so, please describe.

16          And I think that that would really cover the water

17 without having to be so intrusive and particular, and so

18 arguably overbroad in those questions.  So that's what I am

19 going to suggest to you.

20          Now, you may come to your own collective decision.

21 These are just my suggestions. So let's see based upon my sort

22 of like initial reaction whether or not that would aid in

23 coming to a collective agreement as to what the questionnaire

24 should be.

25          THE COURT:  Would that be helpful to you?

1       MS. KEELEY:  I think it would be very helpful, Your

2  Honor. I would like to make one.  Question number 29, which

3  asks about reading prospectuses, I also know it is not based

4  on the indictment but based on the Jenck's material we have

5  been receiving from the government a number of the

6  government's witnesses are going to claim that they did not

7  read the offering memorandum of private placement memorandum

8  in this case, and I do think it is important to find out if

9  jurors have a predisposed views as to whether or not somebody

10  should -- either should have read the prospectus, should be

11  held to it if they don't, or if they have a predisposed view

12  that the prospectus doesn't mean anything, and they shouldn't

13  have any negative implication with the fact that somebody

14  chose not to read it.

15       THE COURT: I am not that terribly concerned about --

16  I am not going to be -- Mr. Sinclair.

17       MR. SINCLAIR:  Your Honor, then we have a similar

18  reaction as the Court had to the question.  We don't think it

19  goes to bias, we think it is overbroad, and we think questions

20  that the Court proposed this morning really cover the type of

21  situation that Ms. Keeley is talking about -- if one of these

22  jurors has a bad situation with the stock market or one of

23  their brokers or --

24       THE COURT:  I am open to it.  If you can find a way

25  of accommodating counsel's concerns, try to do so.  You may

9

1   find some language that will, you know, have a common ground

2   to it.

3          MS. KEELEY: Great.

4          THE COURT: So, hopefully, this will help.  Do you

5   want me to read this again?

6          MS. KEELEY:  We will -- if you can give them to us,

7   that would be great.

8          THE COURT:  I will give this to Mr. Innelli.  He can

9   share them with you here.

10         Anything else on the questionnaire?

11         Let's put down the next date, Mr. Innelli, that will

12  accommodate everybody's schedule.  My suggestion would be,

13  possibly, some time mid September.  That would give us some

14  lead time.  Anything that comes up over the summer, we will

15  have the time to address it.

16         MS. KEELEY:  That's fine, Your Honor. I was getting

17  the additional questions.  Are you setting a date for our next

18  status conference?

19         THE COURT:  Yes.

20         THE CLERK: How is September 18th, which is a Friday,

21  at 2:30.  Rosh Hashanna, that begins at sundown.  I don't know

22  if that makes a difference.

23         (Discussion held off the record)

24         THE CLERK:  So the next conference is September 17th

25  at 3 p.m.

1          THE COURT:  Now, I don't know whether this going to

2     be 404(b) material, but I think on that particular time you

3     might have a good handle on it.

4          MR. McGOVERN:  We will. We are planning to file

5     something in the 404(b).

6          THE COURT:  So try to get that to me in advance and

7     whatever 404(b) concerns you have, we will make a decision

8     that day or shortly after that.

9          MS. KEELEY:   We have agreed upon a date for

10    August 14th for the government to give us 404(b).

11         THE COURT:  Have those papers and we will be able to

12    discuss that on the 1st.

13         Any other housekeeping matters?

14         MS. KEELEY: Just an additional housekeeping on the

15    juror questionnaire, Your Honor.  Based on the comments that

16    have been stated in the prior conference and our e-mail

17    traffic with the Court, it's our understanding you plan to

18    have the jurors come in early to fill those out?

19         THE COURT:  The way it works mechanically is that we

20    will call the venire into the courtroom, they fill out the

21    questionnaires here, and I'll just say some words of greeting,

22    and then you will take the questionnaires.  Mr. Innelli, will

23    supervise the administrative aspect thereafter, but you will

24    make copies of it, I guess.  How does that work?  Mr. Innelli,

25    you make copies that same day?

1        THE CLERK:  Yes.  Actually, the questionnaire is

2   going to be handed out in the central jury room.

3        THE COURT:  Filled out there.

4        THE CLERK:  And then copies -- the originals will be

5   sent to the copy center where copies will be made for the

6   counsel and the Court.

7        THE COURT:  It should be available that same day?

8        THE CLERK:  Probably the next day.

9        THE COURT:  I will stage it in time-wise and then,

10   you'll have the jury questionnaires presumably the next day.

11   I will give you a reasonable amount of time to review them,

12   and you're going to really have to make your best efforts to

13   come to an agreement and not be foolish about the way you

14   conduct yourself because we need to do -- the whole concept of

15   this is that you will collectively agree on the obvious jurors

16   -- prospective jurors who should be, you know, not going into

17   the courtroom and dismissed for cause or whatever and it's

18   always worked out in the past.

19        I am only used to dealing with highly skilled

20   professional sophisticated lawyers.  I made that presumption

21   here.  I hope I am not going to be disappointed because if you

22   are not dealing with people who are really good professionals,

23   they get involved with nitty-gritty.  They can't come to an

24   agreement.  Then it becomes unwieldily.  I have not had that

25   problem yet, and I don't expect to have it now.  So arguably

1  we will have a group of 40, 50 that will survive the cut --

2  the collective cut, so to speak, that you each are comfortable

3  with having them questioned by me, and what I do when I do the

4  questioning is that I will just try to be interactive with

5  them, have the questionnaires in front of me.  If there's a

6  particular concern that I spotted I will just isolate that

7  matter to talk to them about, so you folks can then get a

8  sense of hearing and talking and watching them, and I will

9  give you ample opportunity to make your little notes -- what

10  you want to do, and I will just be talking to them, picking up

11  things here and there; just somehow get them to be interactive

12  with me.

13          If you have any particular concerns based upon their

14  answers to me or anything else in the questionnaire, you let

15  me know, and I can add some follow-up questions after I get

16  through talking to them.  It will work out fine.  All you have

17  to do is exercise your preempts because you know you have

18  taken care of anything that could be a for cause.

19          MR. McGOVERN:  Does Your Honor want us to submit

20  questions beforehand or identify--

21          THE COURT:  -- I don't need them.

22          MR. McGOVERN:  It's easier for us.

23          THE COURT:  I will have the questionnaire.  I don't

24  think you have to submit questions beforehand.

25          MS. KEELEY:   The one caveat to that process that we

1    would request -- and we had started a dialogue with the

2    government on this, I think they are amenable it to, I don't

3    want to speak for them -- is when we bring in the jurors,

4    particularly if they are going to be sent home after they fill

5    out the questionnaire, to have a strong admonishment from the

6    Court and I will have ask for Your Honor yourself to do that,

7    telling them about not googling, doing anything else.

8            THE COURT:  Yes, remind me about that.  In the world

9    we have today, it is very important to say that to jurors. You

10   may want to -- after you look at the questionnaires, I will

11   let you give me a list of, you know, any concerns that you

12   have on each questionnaire that you have in front of you if

13   you wanted to ask them that question:  Four, question eight, I

14   will let you do that, if you want.

15           MS. KEELEY:  Just to clarify, my understanding is

16   then we will get the jury questionnaires the night of the

17   13th, and then start bringing jurors back a day after that?

18           THE COURT: No, no, it is not going be the 13th at

19   all.  It will be the week before.

20           THE CLERK:  Right.

21           MS. KEELEY:   Are we not going to run into the same

22   Jewish holiday problem we had before?

23           MS. BRUNE: I thin we already decided to --

24           THE COURT:  We will work it out. I will sit down

25   with Mr. Innelli.  We will have a time schedule.  We will

1    accommodate the time schedule.

2             MS. KEELEY: Thank you, Your Honor.

3             THE COURT:  But presumably the actual questioning of

4    the jurors by me and the peremptory challenges will be on the

5    14th.

6             THE CLERK:  Right.

7             THE COURT:  And you know, be ready to go to trial

8    the next day.  That is probably the way it will work out. I

9    may or may not finish, give some preliminary comments to the

10   jurors, but we are not going to start the actual trial until

11   the next day.  We probably wouldn't have openings until the

12   next day either.  You will be prepared in either event.

13            Anything else about these administrative concerns?

14            MR. McGOVERN:  I think I should bring to the Court's

15   attention that we, in the break between the last appearance

16   and this appearance, we also met and discussed the potential

17   stipulation in this case, and the defendants have indicated

18   favorably. They are willing to stipulate that all the Bear

19   Sterns documents are, in fact, Bear Sterns documents and to

20   authenticity.

21            They were unwilling to stipulate to the authenticity

22   to some other documents, but because of the nature of one of

23   the documents I wanted to bring it to the Court's attention.

24   My understanding from the defendants, and specifically,

25   defendant Tannin, that he is unwilling to stipulate to the

1    authenticity of the sort of oft spoken about G-mail in this

2    case, which is an e-mail that was sent from his personal

3    account back in April of 2007 and --

4             THE COURT:  It is one isolated  --

5             MR. McGOVERN:  Yes, this is just, for example, and

6    it's almost posed as a little bit of a problem.  I think I

7    want to bring it to the Court's attention as soon as possible.

8    That e-mail came from -- I believe Ms. Beattie turned it over

9    to counsel for Bear Stearns. If they are not willing to

10   stipulate to the authenticity of that document, having not

11   turned over any of the -- Mr. Tannin's computers from his

12   house or any information like that, we are left with the

13   problem of proving the authenticity of the document, which

14   could possibly involve calling Ms. Beattie as a witness in the

15   case because she's the person who took it from Mr. Tannin and

16   who gave it to counsel for Bear Stearns.  So we just want to

17   bring that to the Court's attention because it could raise an

18   issue of maybe Ms. Beattie would have to come over --

19            THE COURT:  Chain of custody issues and you are

20   going to have be a witness here, that you took that, and gave

21   it to Bear Stearns.  What do you want to do?

22            We are getting little bit ahead of ourselves.

23            MS. BEATTIE: Yes, we are, and as I told the

24   government yesterday, I was certainly willing to consider

25   stipulating to authenticity as long as there was a stipulation

1    that made clear that we produced the document.

2    THE COURT:  Doesn't seem to be a problem, does it?

3    MR. McGOVERN: Well, there is a little bit of a

4    problem that will become more evident to the Court as the

5    trial proceeds.  It wasn't purely a voluntary act on

6    Mr. Tannin's part to come forward with the document; it was

7    only at the urging of counsel.

8    THE COURT:  Either you will stipulate or you won't.

9    If you don't stipulate, you will have to be called as a

10   witness and the fallout will be -- -

11   MR. McGOVERN:  A Curcio hearing would be enough to

12   satisfy, I am sure.

13   THE COURT:  We will flesh it all out.  You may find

14   it might be wiser --

15   MS. BRUNE:  It might be that the government would

16   find it wiser to concede the fact that the document was

17   produced by Mr. --

18   THE COURT: I don't know whether that adds to the

19   authenticity of the document.  Why do they have to concede

20   that?

21   MS. BRUNE:  Their argument, as I understand, of

22   course, it is authentic, and you know it because we produced

23   it, and that is not a bad argument, but it does seem to me

24   that they should stipulate that we produced it.  That is the

25   basis for its authenticity.

1      THE COURT:  We could simply handle that by saying

2   that the jury should not draw any inferences one way or the

3   other as to who produced this document, other than the fact

4   that they have to accept the fact that it we have this

5   document.

6      MS. BRUNE:  We can do that but I'm not sure that is

7   fair, Your Honor, because the government is going to try to

8   make all kinds of arguments about the circumstances of its

9   production and I think the jury's entitled to know.

10      THE COURT: I don't know whether it is relevant or

11   not as we sit here.

12      MS. BRUNE:  Perhaps we can work it out.  Spend more

13   time on it.

14      THE COURT:  I will give you the latitude because

15   this case, it seems to me to be a case like most cases that

16   come here, talk about anything you want.  I want you to do

17   that.  We have a comfort level here that I can accommodate.

18   Anything else?

19      MR. McGOVERN:  That's it, Your Honor, except for the

20   resolution of the motion, I guess.

21      THE COURT:  Well, you know, I already made the

22   ruling, and I've gone over your arguments.  I have them all

23   down here.  I am not going to read them into the record.

24   Maybe I will reduce it to a written document, so you can have

25   the comfort that I have seriously considered all your

1    arguments that you are dealing with.  Once again, you want me

2    to reconsider my ruling, but I am not going to do that.  I am

3    going to let the insider trading against Mr. Cioffi and I have

4    said before, I recognize, again, that there are reasonable

5    arguments in respect to the uniqueness of the hedge fund

6    dynamics which have some urgency.  I've considered all that

7    and the way will be that the circuit court of appeals will

8    agree, but I adhere to my original ruling. I am going to read

9    why into the record now.

10           I appreciate that hedge funds are different from

11   other investment vehicles in many respects, and there may be

12   circumstances under which a fund manager may appropriately

13   trade in the fund as an investor consistent with his or her

14   duty as a manager.  Here, however, the government's theory is

15   that Mr. Cioffi effectively bailed out at a time when the Fund

16   was experiencing liquidity problems, such that his redemption

17   worsened the Fund's finances, and ultimately, left the other

18   investors holding the bag.  Such conduct is inconsistent with

19   his duties as the Fund's  manager, without regard to the legal

20   nicety of whether those duties ruined the Fund itself or its

21   investor. The government's theory, if believed by the jury,is

22   a viable basis for insider trading liability.

23           Now, I pause, once again, to say the Second Circuit

24   may disagree with that but whether we go forward and based

25   upon the facts that evolved at trial that will possibly

1    determine how well, actually, shape the charge to the jury on

2    the issue, and the government, I think, believes that the

3    issue of fiduciary relationships is a fact specific type of

4    inquiry, and not a matter of law, and I am curious just to

5    have, Mr. Sinclair, give me some sense of why you think it's

6    fact intrusive.  Implicit in my ruling is that there will be

7    certain facts that will be used at trial, we understand that,

8    but I am just curious about whether or not it is a pure issue

9    of law, or whether or not there are other facts, other than

10   what I have just mentioned, perhaps, that would bear upon the

11   issue of fiduciary duty.  I mean I know you are playing it

12   close to the vest by not saying more than you have said, but

13   is there any proffer that you wish to make as to what facts

14   you believe you are going to develop at the trial that you

15   think will constitute a further basis for concluding that

16   there was the requisite fiduciary responsibility to somebody

17   out there?

18            MR. McGOVERN:  Well, Your Honor, we do believe that

19   there are other facts that we will be proving at trial.  As in

20   citing the Lay decision from the Northern District of Ohio, we

21   have shown that that there are situations where the facts can

22   show the creation of a fiduciary duty even where, perhaps,

23   there's some other case law out there that says fiduciary duty

24   does not necessarily exist.  We believe that our --

25            THE COURT:  Give me an example.  I mean you believe

1   that that really stands for the proposition that whether there

2   is a fiduciary duty is an issue of fact and that's something

3   that the jury should determine?

4           MR. McGOVERN:  Well, yes, we believe that it is an

5   issue of fact that should be put before the jury. I think,

6   also, as the government points out in its alternative

7   arguments, there are legal issue that may also carry the day,

8   as well as breaching duties to the fund, breaching duties to

9   Bear Stearns Asset Management.

10          THE COURT:  I am moving in sort of bare bones ruling

11  that suffices to allow the issue to go forward and not to

12  dismiss the count, but I am just curious as to what other

13  facts you think support having the jury determine whether

14  there was fiduciary duty.

15          MR. McGOVERN:  All right. Well, Your Honor, our

16  first position is that the Goldstein holding has nothing to do

17  with this case because it was an investor advisor of that

18  case.

19          THE COURT: I tend to agree with that.

20          MR. McGOVERN: Okay. What we are dealing with here is

21  a 10(b)5 violation, and we believe that factually we can prove

22  through our witnesses and through the transcripts of the

23  conference calls and through the e-mails in this case that

24  Mr. Cioffi and Mr. Tannin not only acted as hedge found

25  managers -- as passive hedge fund managers, but they were

1 active.  They spoke regularly to their investors about their

2 investments.  They talked -- spoke to their investors about

3 their investment goals, they talked about what it was that the

4 goals of the fund were, and how those goals matched up with

5 the individuals.

6          THE COURT:  What if they were not invested

7 themselves in the funds, would your position be different?

8          MR. McGOVERN:  No.  These investment managers or

9 these portfolio managers, solicited these investors to come

10 in, talk to us. On the April 25th conference call alone on two

11 occasions they invited their investors please come in, talk to

12 us about your problems before you think about doing anything

13 with your investments.

14          THE COURT:  Those are other types of facts that go

15 toward allowing the jury to determine whether there was a

16 fiduciary relationship.

17          MR. McGOVERN:  Absolutely.

18          THE COURT:  We have to sort of define in our charge

19 what constitutes a fiduciary relationship.

20          MR. McGOVERN:  I think we touched upon it in our

21 opposition to the last motion, what it is that the -- I

22 believe the Supreme Court has actually said what it is that

23 brings us to a fiduciary relationship.

24          THE COURT: I am looking, of course, you know --

25 focussed very strongly on that at the proper time.  I am just

1    trying to think ahead as to what the charge is going to look

2    like in this particular situation.

3         MS. KEELEY: Your Honor, our position would be to

4    continue to ask for a charge which says there is no fiduciary

5    duty for Mr. Cioffi and Mr. Tannin as a matter of law, and the

6    dichotomy is that he just set out -- Mr. McGovern would say a

7    hedge fund manager, if he speaks to his investors, suddenly

8    has a fiduciary duty and can be guilty of insider trading;

9    where a hedge fund manager who takes full advantage of the

10   lack of regulations by SEC and refuses to say anything to

11   their investors is better protected and can do whatever he

12   wants for his insider trading.  That is a logical matter and a

13   legal matter with respect to fiduciary duty --

14        THE COURT:  This is all interesting stuff but you

15   know, I've got to make a ruling.  What, if anything, do you

16   take from the fact that allegedly he did sell off a lot of his

17   holdings and I think -- what -- two million or something like

18   that?

19        MR. McGovern:  Two million.

20        THE COURT:  Do you place any significance on that in

21   terms of sorting out these little nuisances?

22        MS. KEELEY:  With respect to insider, absolutely not

23   Your Honor, he had no fiduciary duty to advise --

24        THE COURT:  I know you say that.

25        MS. KEELEY:  He had no fiduciary duty to advise the

1    investors.  The offering memorandum explicitly told investors

2    that he could withdraw money without letters to them.  The

3    government cited to another portion of offering memorandum

4    where they claim there was a requirement to go up to the

5    independent directors, and with all due respect to those

6    preparing for this argument today, I was incredibly surprised

7    and upset to see what the government cited to because they

8    provided you one page.  The provision continued on to the next

9    page. That next page made it clear what they were talking

10   about was the Investment Advisor's Act.

11           THE COURT:  Maybe all that is presented to the jury

12   and leave it to the jury to decide whether based upon all

13   these facts that if that squares with the notion of a

14   fiduciary relationship -- I think that is probably where we

15   are heading.

16           MS. KEELEY:  But under the law there are certain

17   categories which, as a matter of law, you don't have a

18   fiduciary duty, and the entire way a hedge fund is structured,

19   it does not make sense to impose a fiduciary duty.

20           THE COURT: I am not so ure sure I agree with that,

21   but that is the question, and that's going to be resolved I

22   imagine as a matter of first impression by the circuit, if

23   there should be a conviction.

24           With respect to due process notice, insider trading

25   is simply one variant of Section 10(b)'s broad prohibition on

1    the use of, "substantive device[s] or contrivance[s]" in the

2    purchase or sale of securities. As the Second Circuit recently

3    explained, " [i]n its ordinary meaning deceptive covers a wide

4    spectrum of conduct involving cheating or trading in

5    falsehoods." I cite SEC versus Dorozhko and doesn't appear to

6    be any official reports yet, but I will have the citation for

7    you in the transcript -- I will give it to the court reporter.

8    Given this broad definition I am satisfied that a reasonable

9    person would understand that bailing out a collapsing fund

10   while trying to assure other investors of the fund's stability

11   qualifies as deceptive and therefore, falls within the scope

12   of Section 10(b).

13          Once again, these are all interesting questions, but

14   I've got to fish or cut bait as the first judge taking a shot

15   at this.

16          As an aside, not that necessarily that was the basis

17   for my ruling here, but as a practical matter this would avoid

18   having to possibly delay the trial, since if I were to rule

19   otherwise I understand that the laws -- the government would

20   have the right to take an interlocutory appeal, and you know,

21   that would really put us way behind the eight ball in terms of

22   our time schedule.  That is not the reason why I am doing

23   this, but it just happens to be a positive fallout from my

24   ruling, perhaps. Okay.

25          Now, I appreciate your patience and solicitude, and

1   we will see how this thing unfolds during the course of the

2   trial.

3          Anything else before we address the subpoena?

4          MS. KEELEY:  Other than, Your Honor, we may have

5   reached agreement.

6          THE COURT:  So let's talk about that.

7          MS. KEELEY:  It appears we have.

8          THE COURT:  Mr. Innelli is advising me of things,

9   like we have to waive speedy trial on the record.

10          I think we waived way back when we classified this

11   as a complex litigation and I think that, you know, covers the

12   territory.  Is it necessary to repeat?  I guess it is possible

13   that sometimes complex litigation can become less complex

14   during the proceedings but I don't think that's the case here.

15          MS. KEELEY:  No, Your Honor.

16          THE COURT:  If anything, it seems to be more

17   complex. So, you know, the fact that it happens to be complex

18   litigation, I think, takes care of speedy trial concerns.

19          On the subpoena, have you reached an accommodation?

20          MR. BOXER: We have. Good morning, Your Honor Nelson

21   Boxer, for Shelley Bergman.  We have agreed that we would

22   withdraw our motion to quash and the two outstanding requests,

23   three and four.  In lieu of responding to those requests

24   Mr. Bergman would produce any documents he has reflecting

25   between 2006 and 2008 any hedge fund investments, any

1    investments in real estate investment trusts, or real estate

2    company, or any fund that invests in real estate, and if he

3    has submitted any net worth statement during that period of

4    time, he would produce a copy of such statement.

5              THE COURT:  I think that is a good accommodation.  I

6    mean I had some trouble with the fact that it was just too

7    broad, and we are going to talk about that, and have to

8    disclose every single investment he has made over the last two

9    years seems to be inappropriate, but I am glad you were able

10   to reach that arrangement.

11             MR. BOXER: The only thing I would just ask for the

12   record, is that it will be explained to counsel I have not had

13   Mr. Bergman undertake the search.  It seemed to me it would

14   defeat the motion to quash.  I can't make any representations

15   that there are responsive documents but obviously, if there

16   are, we will produce them.

17             THE COURT:  Very good. Thank you.  You have ample

18   time to do all that between now and October 4th.

19             Anything else we need to talk about today?

20             I'd like to wish you all have a nice pleasant

21   summer, but I suspect that will not be the case, but if you

22   need to contact me for important reasons during the month of

23   August, I will be back September 5th, don't hesitate to

24   contact Mr. Innelli.  I can be reached and in contact with the

25   office everyday with technology that we have, so you can deal

1    what problems that emerge.  Hopefully, there won't be a need

2    to enlist my services.  I will see you on September 17th.

3              MS. BEATTIE:  Thank you, Your Honor.

4              MR. McGOVERN:  Thank you.

5              (Proceedings adjourned as above set forth)

6                              oOo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## 0

**08-CR-415** [1] - 1:4

## 1

**10(b)** [1] - 24:12
**10(b)'s** [1] - 23:25
**10(b)5** [1] - 20:21
**10*004** [1] - 1:24
**10016** [1] - 2:3
**11201** [1] - 1:17
**12** [2] - 5:16, 7:6
**13** [1] - 5:23
**13th** [2] - 13:17, 13:18
**14th** [2] - 10:10, 14:5
**15** [1] - 6:5
**17th** [2] - 9:24, 27:2
**18th** [1] - 9:20
**1st** [1] - 10:12

## 2

**20005** [1] - 1:20
**2006** [1] - 25:25
**2007** [1] - 15:3
**2008** [1] - 25:25
**2009** [1] - 1:9
**225** [1] - 2:6
**25** [1] - 6:10
**25th** [1] - 21:10
**26** [2] - 6:12, 7:6
**27** [2] - 6:20, 7:6
**271** [1] - 1:17
**28** [1] - 7:6
**29** [2] - 6:24, 8:2
**2:30** [1] - 9:21

## 3

**3** [1] - 9:25
**30** [1] - 7:6

## 4

**40** [1] - 12:1
**404(b** [2] - 10:2, 10:7
**404(b)** [2] - 10:5, 10:10
**4th** [1] - 26:18

## 5

**5** [1] - 1:9
**50** [2] - 7:13, 12:1
**5th** [1] - 26:23

## 6

**613-2369** [1] - 2:7
**613-2489** [1] - 2:7

## 7

**718** [2] - 2:7
**725** [1] - 1:19

## 8

**80** [1] - 1:24

## 9

**90** [1] - 2:2

## A

**a.m** [1] - 1:10
**able** [3] - 4:13, 10:11, 26:9
**absolutely** [2] - 21:17, 22:22
**accept** [1] - 17:4
**accommodate** [3] - 9:12, 14:1, 17:17
**accommodating** [1] - 8:25
**accommodation** [2] - 25:19, 26:5
**account** [1] - 15:3
**Act** [1] - 23:10
**act** [1] - 16:5
**acted** [1] - 20:24
**active** [1] - 21:1
**actual** [2] - 14:3, 14:10
**add** [1] - 12:15
**additional** [2] - 9:17, 10:14
**address** [2] - 9:15, 25:3
**adds** [1] - 16:18
**adhere** [1] - 18:8
**adjourned** [1] - 27:5
**administrative** [2] - 10:23, 14:13
**admonishment** [1] - 13:5
**advance** [1] - 10:6
**advantage** [2] - 5:13, 22:9
**advise** [2] - 22:23, 22:25
**advising** [1] - 25:8
**advisor** [3] - 6:21, 7:9, 20:17
**Advisor's** [1] - 23:10
**agree** [4] - 11:15, 18:8, 20:19, 23:20
**agreed** [2] - 10:9, 25:21
**agreement** [4] - 7:23, 11:13, 11:24, 25:5
**ahead** [2] - 15:22, 22:1
**aid** [1] - 7:22
**allegedly** [1] - 22:16
**allow** [1] - 20:11
**allowing** [1] - 21:15

**almost** [1] - 15:6
**alone** [1] - 21:10
**ALSTON** [1] - 2:2
**alternative** [1] - 20:6
**amenable** [1] - 13:2
**AMERICA** [1] - 1:4
**amount** [2] - 4:24, 11:11
**ample** [2] - 12:9, 26:17
**ANDREW** [1] - 2:3
**answers** [1] - 12:14
**appeal** [1] - 24:20
**appeals** [1] - 18:7
**appear** [1] - 24:5
**appearance** [2] - 14:15, 14:16
**appreciate** [2] - 18:10, 24:25
**appropriately** [1] - 18:12
**April** [2] - 15:3, 21:10
**areas** [1] - 6:6
**arguably** [2] - 7:18, 11:25
**argument** [3] - 16:21, 16:23, 23:6
**arguments** [5] - 17:8, 17:22, 18:1, 18:5, 20:7
**arrangement** [1] - 26:10
**aside** [1] - 24:16
**aspect** [1] - 10:23
**Asset** [1] - 20:9
**Assistant** [1] - 1:16
**assure** [1] - 24:10
**attention** [4] - 14:15, 14:23, 15:7, 15:17
**Attorney** [1] - 1:14
**ATTORNEY** [1] - 1:23
**attorney** [2] - 1:18, 3:7
**aTTORNEYS** [1] - 1:13
**Attorneys** [1] - 1:16
**August** [2] - 10:10, 26:23
**august** [1] - 1:9
**authentic** [1] - 16:22
**authenticity** [8] - 14:20, 14:21, 15:1, 15:10, 15:13, 15:25, 16:19, 16:25
**available** [1] - 11:7
**Avenue** [1] - 2:2
**avoid** [1] - 24:17

## B

**bad** [3] - 7:8, 8:22, 16:23
**bag** [1] - 18:18
**bailed** [1] - 18:15
**bailing** [1] - 24:9
**bait** [1] - 24:14
**ball** [1] - 24:21
**bare** [1] - 20:10
**based** [7] - 7:21, 8:3, 8:4, 10:15, 12:13, 18:24, 23:12
**basis** [4] - 16:25, 18:22, 19:15, 24:16
**Bear** [6] - 14:18, 14:19, 15:9, 15:16, 15:21, 20:9
**bear** [1] - 19:10

**BEATTIE** [3] - 1:25, 15:23, 27:3
**Beattie** [4] - 2:23, 15:8, 15:14, 15:18
**become** [2] - 16:4, 25:13
**becomes** [1] - 11:24
**BEFORE** [1] - 1:11
**beforehand** [2] - 12:20, 12:24
**begins** [1] - 9:21
**behalf** [1] - 2:12
**behind** [1] - 24:21
**believes** [1] - 19:2
**benefit** [1] - 4:7
**BENTON** [1] - 1:14
**Bergman** [4] - 2:4, 25:21, 25:24, 26:13
**best** [1] - 11:12
**better** [1] - 22:11
**between** [3] - 14:15, 25:25, 26:18
**bias** [1] - 8:19
**BIRD** [1] - 2:2
**bit** [3] - 15:6, 15:22, 16:3
**blame** [1] - 5:19
**BLOCK** [1] - 1:11
**bones** [1] - 20:10
**Boxer** [1] - 25:21
**BOXER** [3] - 2:3, 25:20, 26:11
**breaching** [2] - 20:8
**break** [1] - 14:15
**brief** [1] - 5:1
**bring** [5] - 13:3, 14:14, 14:23, 15:7, 15:17
**bringing** [1] - 13:17
**brings** [1] - 21:23
**broad** [8] - 4:4, 5:4, 5:20, 6:18, 7:4, 23:15, 24:8, 26:7
**Broad** [1] - 1:24
**broker** [2] - 6:20, 7:9
**brokers** [1] - 8:23
**Brooklyn** [3] - 1:7, 1:17, 2:6
**Brune** [2] - 2:23
**BRUNE** [8] - 1:23, 1:25, 2:23, 13:23, 16:15, 16:21, 17:6, 17:12
**business** [6] - 5:7, 5:8, 5:9, 5:13, 6:6, 7:14
**BUTSWINKAS** [1] - 1:20
**buttoned** [1] - 4:6
**BY** [4] - 1:15, 1:20, 1:25, 2:3

## C

**Cadman** [2] - 1:17, 2:6
**CAMPBELL** [1] - 1:14
**care** [3] - 3:1, 12:18, 25:18
**carry** [1] - 20:7
**case** [15] - 4:1, 5:3, 8:8, 14:17, 15:2, 15:15, 17:15, 19:23, 20:17, 20:18, 20:23, 25:14, 26:21
**cases** [1] - 17:15
**cast** [2] - 2:14, 2:19
**CAT** [1] - 2:9
**categories** [1] - 23:17

**CAUSE** [1] - 1:11
**caveat** [1] - 12:25
**center** [1] - 11:5
**central** [1] - 11:2
**certain** [2] - 19:7, 23:16
**certainly** [1] - 15:24
**chain** [1] - 15:19
**challenges** [1] - 14:4
**characters** [2] - 2:14, 2:19
**charge** [4] - 19:1, 21:18, 22:1, 22:4
**cheating** [1] - 24:4
**choice** [1] - 5:14
**chose** [1] - 8:14
**Cioffi** [6] - 1:22, 2:10, 18:3, 18:15, 20:24, 22:5
**Cioffi's** [1] - 3:7
**circuit** [2] - 18:7, 23:22
**Circuit** [2] - 18:23, 24:2
**circulated** [1] - 4:16
**circumstances** [3] - 4:4, 17:8, 18:12
**citation** [1] - 24:6
**cite** [1] - 24:5
**cited** [2] - 23:3, 23:7
**citing** [1] - 19:20
**claim** [2] - 8:6, 23:4
**clarify** [1] - 13:15
**classified** [1] - 25:10
**clear** [2] - 16:1, 23:9
**CLERK** [8] - 2:10, 9:20, 9:24, 11:1, 11:4, 11:8, 13:20, 14:6
**close** [4] - 5:16, 6:19, 7:7, 19:12
**collapse** [1] - 5:21
**collapsing** [1] - 24:9
**collective** [3] - 7:20, 7:23, 12:2
**collectively** [1] - 11:15
**comfort** [2] - 17:17, 17:25
**comfortable** [2] - 5:11, 12:2
**coming** [1] - 7:23
**comments** [3] - 4:18, 10:15, 14:9
**common** [1] - 9:1
**company** [1] - 26:2
**complex** [5] - 25:11, 25:13, 25:17
**compromise** [1] - 3:4
**computers** [1] - 15:11
**concede** [2] - 16:16, 16:19
**concept** [1] - 11:14
**concern** [1] - 12:6
**concerned** [1] - 8:15
**concerns** [6] - 8:25, 10:7, 12:13, 13:11, 14:13, 25:18
**concluding** [1] - 19:15
**conduct** [3] - 11:14, 18:18, 24:4
**conference** [5] - 9:18, 9:24, 10:16, 20:23, 21:10
**CONFERENCE** [1] - 1:11
**CONNOLLY** [1] - 1:19
**consider** [2] - 5:9, 15:24
**considered** [2] - 17:25, 18:6

**consistent** [1] - 18:13
**constitute** [1] - 19:15
**constitutes** [1] - 21:19
**contact** [3] - 26:22, 26:24
**continue** [3] - 3:6, 3:7, 22:4
**continued** [1] - 23:8
**contrivance[s** [1] - 24:1
**conviction** [1] - 23:23
**cooperative** [1] - 3:19
**copies** [4] - 10:24, 10:25, 11:4, 11:5
**copy** [3] - 4:17, 11:5, 26:4
**counsel** [6] - 4:17, 11:6, 15:9, 15:16, 16:7, 26:12
**counsel's** [1] - 8:25
**count** [2] - 3:8, 20:12
**counterintuitive** [1] - 4:25
**course** [3] - 16:22, 21:24, 25:1
**courses** [1] - 6:5
**Court** [9] - 2:5, 4:20, 8:18, 8:20, 10:17, 11:6, 13:6, 16:4, 21:22
**COURT** [55] - 1:1, 2:14, 2:19, 2:25, 3:5, 3:13, 3:17, 4:22, 7:25, 8:15, 8:24, 9:4, 9:8, 9:19, 10:1, 10:6, 10:11, 10:19, 11:3, 11:7, 11:9, 12:21, 12:23, 13:8, 13:18, 13:24, 14:3, 14:7, 15:4, 15:19, 16:2, 16:8, 16:13, 16:18, 17:1, 17:10, 17:14, 17:21, 19:25, 20:10, 20:19, 21:6, 21:14, 21:18, 21:24, 22:14, 22:20, 22:24, 23:11, 23:20, 25:6, 25:8, 25:16, 26:5, 26:17
**court** [2] - 18:7, 24:7
**Court's** [4] - 14:14, 14:23, 15:7, 15:17
**Courthouse** [1] - 1:6
**courtroom** [2] - 10:20, 11:17
**cover** [2] - 7:16, 8:20
**covered** [1] - 5:23
**covers** [2] - 24:3, 25:11
**creation** [1] - 19:22
**CRIMINAL** [1] - 1:11
**Curcio** [1] - 16:11
**curious** [3] - 19:4, 19:8, 20:12
**current** [1] - 5:24
**custody** [1] - 15:19
**cut** [3] - 12:1, 12:2, 24:14

## D

**D.C** [1] - 1:20
**dANA** [1] - 1:20
**date** [4] - 3:18, 9:11, 9:17, 10:9
**day-to-day** [1] - 6:10
**deal** [1] - 26:25
**dealing** [5] - 5:13, 11:19, 11:22, 18:1, 20:20
**deceptive** [2] - 24:3, 24:11
**decide** [1] - 23:12
**decided** [1] - 13:23
**decision** [3] - 7:20, 10:7, 19:20
**decisions** [1] - 6:10

defeat [1] - 26:14
Defendant [1] - 1:22
DEFENDANT [1] - 1:23
defendant [3] - 2:1, 4:3, 14:25
defendants [2] - 14:17, 14:24
Defendants [1] - 1:9
DEFENDANTS [1] - 1:18
defense [1] - 4:16
define [1] - 21:18
definition [1] - 24:8
definitive [1] - 4:22
delay [1] - 24:18
describe [2] - 7:10, 7:15
describing [1] - 6:25
detailed [1] - 6:9
determination [2] - 3:8, 4:23
determine [4] - 19:1, 20:3, 20:13, 21:15
develop [1] - 19:14
device[s [1] - 24:1
dialogue [1] - 13:1
Diamond [1] - 2:5
dichotomy [1] - 22:6
difference [1] - 9:22
different [2] - 18:10, 21:7
directors [1] - 23:5
disagree [1] - 18:24
disappointed [1] - 11:21
disclose [1] - 26:8
discuss [1] - 10:12
discussed [1] - 14:16
Discussion [1] - 9:23
discussions [1] - 4:19
dismiss [1] - 20:12
dismissed [2] - 3:9, 11:17
disqualify [1] - 6:3
District [1] - 19:20
DISTRICT [3] - 1:1, 1:2, 1:12
document [11] - 6:25, 7:2, 15:10, 15:13, 16:1, 16:6, 16:16, 16:19, 17:3, 17:5, 17:24
documents [6] - 14:19, 14:22, 14:23, 25:24, 26:15
Dorozhko [1] - 24:5
down [4] - 4:6, 9:11, 13:24, 17:23
draw [1] - 17:2
due [2] - 23:5, 23:24
during [4] - 25:1, 25:14, 26:3, 26:22
duties [4] - 18:19, 18:20, 20:8
duty [3] - 18:14, 19:11, 19:22, 19:23, 20:2, 20:14, 22:5, 22:8, 22:13, 22:23, 22:25, 23:18, 23:19
dynamics [1] - 18:6

### E

e-mail [3] - 10:16, 15:2, 15:8
e-mails [1] - 20:23
early [1] - 10:18

easier [1] - 12:22
East [2] - 1:17, 2:6
EASTERN [1] - 1:2
EDWARD [1] - 1:21
effectively [1] - 18:15
efforts [1] - 11:12
eight [3] - 5:6, 13:13, 24:21
either [4] - 8:10, 14:12, 16:8
Eleven [1] - 1:10
emerge [1] - 27:1
employer [1] - 5:24
enlist [1] - 27:2
enormous [1] - 4:23
entire [1] - 23:18
entitled [1] - 17:9
ESQ [6] - 1:20, 1:21, 1:21, 1:25, 1:25, 2:3
estate [3] - 26:1, 26:2
event [1] - 14:12
everyday [1] - 26:25
evident [1] - 16:4
evolved [1] - 18:25
example [3] - 6:6, 15:5, 19:25
except [1] - 17:19
exercise [1] - 12:17
exist [1] - 19:24
expect [1] - 11:25
expend [1] - 4:23
experience [1] - 7:8
experiencing [1] - 18:16
explain [2] - 6:17, 7:11
explained [2] - 24:3, 26:12
explicitly [1] - 23:1
express [1] - 4:13

### F

fact [13] - 4:13, 8:13, 14:19, 16:16, 17:3, 17:4, 19:3, 19:6, 20:2, 20:5, 22:16, 25:17, 26:6
facts [9] - 18:25, 19:7, 19:9, 19:13, 19:19, 19:21, 20:13, 21:14, 23:13
factually [1] - 20:21
fair [1] - 17:7
fallout [2] - 16:10, 24:23
falls [1] - 24:11
falsehoods [1] - 24:5
family [3] - 5:6, 5:16, 7:7
favorably [1] - 14:18
FAX [1] - 2:7
felt [1] - 5:12
few [1] - 5:21
fiduciary [18] - 19:3, 19:11, 19:16, 19:22, 19:23, 20:2, 20:14, 21:16, 21:19, 21:23, 22:4, 22:8, 22:13, 22:25, 23:14, 23:18, 23:19
file [1] - 10:4
fill [3] - 10:18, 10:20, 13:4
filled [1] - 11:3

finance [2] - 6:6, 7:14
finances [1] - 18:17
financial [1] - 6:10
fine [2] - 9:16, 12:16
finish [2] - 3:2, 14:9
firm [1] - 3:1
first [4] - 4:9, 20:16, 23:22, 24:14
fish [1] - 24:14
five [4] - 4:20, 5:2, 6:14, 6:16
flesh [1] - 16:13
focussed [1] - 21:25
folks [3] - 3:11, 3:18, 12:7
follow [1] - 12:15
follow-up [1] - 12:15
following [1] - 6:6
foolish [1] - 11:13
FOR [3] - 1:13, 1:18, 1:23
format [1] - 4:20
former [1] - 5:24
forth [1] - 27:5
forward [2] - 16:6, 18:24, 20:11
four [2] - 13:13, 25:23
FREDERIC [1] - 1:11
Friday [1] - 9:20
friend [2] - 5:16, 7:7
front [3] - 2:15, 12:5, 13:12
full [1] - 22:9
fund [12] - 18:5, 18:12, 18:13, 20:8, 20:25, 21:4, 22:7, 22:9, 23:18, 24:9, 25:25, 26:2
Fund [2] - 18:15, 18:20
fund's [1] - 24:10
Fund's [2] - 18:17, 18:19
funds [2] - 18:10, 21:7

### G

G-mail [1] - 15:1
given [1] - 24:8
glad [1] - 26:9
goals [3] - 21:3, 21:4
Goldstein [2] - 20:16
google [1] - 3:17
googling [1] - 13:7
GOVERN [1] - 1:15
government [11] - 8:5, 10:10, 13:2, 15:24, 16:15, 17:7, 19:2, 20:6, 23:3, 23:7, 24:19
GOVERNMENT [1] - 1:13
government's [4] - 4:17, 8:6, 18:14, 18:21
great [2] - 9:3, 9:7
greeting [1] - 10:21
gritty [1] - 11:23
ground [1] - 9:4
group [1] - 12:1
guess [4] - 6:1, 10:24, 17:20, 25:12
guilty [1] - 22:8

4

## H

**handed** [1] - 11:2
**handle** [2] - 10:3, 17:1
**Hashanna** [1] - 9:21
**heading** [1] - 23:15
**heard** [1] - 5:2
**hearing** [2] - 12:8, 16:11
**hedge** [8] - 18:5, 18:10, 20:24, 20:25, 22:7, 22:9, 23:18, 25:25
**held** [2] - 8:11, 9:23
**help** [2] - 4:5, 9:4
**helpful** [2] - 7:25, 8:1
**hesitate** [1] - 26:23
**highly** [1] - 11:19
**hit** [1] - 3:5
**holding** [2] - 18:18, 20:16
**holdings** [1] - 22:17
**holiday** [1] - 13:22
**home** [1] - 13:4
**Honor** [22] - 2:11, 2:18, 3:3, 3:16, 4:13, 8:2, 8:17, 9:16, 10:15, 12:19, 13:6, 14:2, 17:7, 17:19, 19:18, 20:15, 22:3, 22:23, 25:4, 25:15, 25:20, 27:3
**HONORABLE** [1] - 1:11
**hope** [2] - 3:19, 11:21
**hopefully** [3] - 3:21, 9:4, 27:1
**house** [1] - 15:12
**housekeeping** [2] - 10:13, 10:14

## I

**i]n** [1] - 24:3
**identify** [2] - 6:7, 12:20
**ilene** [1] - 1:15, 2:17
**imagine** [1] - 23:22
**implication** [1] - 8:13
**implicit** [1] - 19:6
**important** [3] - 8:8, 13:9, 26:22
**importantly** [1] - 4:19
**impose** [1] - 23:19
**impression** [1] - 23:22
**inappropriate** [1] - 26:9
**inconsistent** [1] - 18:18
**incredibly** [1] - 23:6
**independent** [1] - 23:5
**indicated** [1] - 14:17
**indictment** [1] - 8:4
**individuals** [1] - 21:5
**inferences** [1] - 17:2
**information** [1] - 15:12
**initial** [1] - 7:22
**Innelli** [7] - 9:8, 9:11, 10:22, 10:24, 13:25, 25:8, 26:24
**inquiry** [1] - 19:4
**insider** [7] - 3:8, 18:3, 18:22, 22:8, 22:12, 22:22, 23:24
**interactive** [2] - 12:4, 12:11

**interesting** [2] - 22:14, 24:13
**interlocutory** [1] - 24:20
**intrusive** [3] - 6:8, 7:17, 19:6
**invested** [2] - 6:12, 21:6
**Investment** [1] - 23:10
**investment** [11] - 5:17, 6:20, 6:25, 7:3, 7:8, 7:9, 18:11, 21:3, 21:8, 26:1, 26:8
**investments** [4] - 21:2, 21:13, 25:25, 26:1
**investor** [3] - 18:13, 18:21, 20:17
**investors** [10] - 18:18, 21:1, 21:2, 21:9, 21:11, 22:7, 22:11, 23:1, 24:10
**invests** [1] - 26:2
**invited** [1] - 21:11
**involve** [1] - 15:14
**involved** [1] - 11:23
**involving** [1] - 24:4
**isolate** [1] - 12:6
**isolated** [1] - 15:4
**issue** [10] - 3:6, 15:18, 19:2, 19:3, 19:8, 19:11, 20:2, 20:5, 20:7, 20:11
**issues** [1] - 15:19
**itself** [2] - 4:1, 18:20

## J

**JAMES** [1] - 1:15
**james** [1] - 2:12
**JARASLOW** [1] - 2:17
**Jaraslow** [1] - 2:17
**JAROSLAW** [1] - 1:15
**Jenck's** [1] - 8:4
**Jewish** [1] - 13:22
**judge** [1] - 24:14
**JUDGE** [1] - 1:12
**judicial** [1] - 4:24
**juror** [2] - 6:3, 10:15
**jurors** [12] - 5:2, 6:1, 8:9, 8:22, 10:18, 11:15, 11:16, 13:3, 13:9, 13:17, 14:4, 14:10
**jury** [15] - 3:6, 3:22, 4:1, 4:15, 11:2, 11:10, 13:16, 17:2, 19:1, 20:3, 20:5, 20:13, 21:15, 23:11, 23:12
**jury's** [1] - 17:9
**jury,is** [1] - 18:21

## K

**Keeley** [1] - 8:21
**KEELEY** [22] - 1:21, 2:11, 2:21, 3:3, 3:15, 8:1, 9:3, 9:6, 9:16, 10:9, 10:14, 12:25, 13:15, 13:21, 14:2, 22:3, 22:22, 22:25, 23:16, 25:4, 25:7, 25:15
**keeley** [1] - 2:20
**kinds** [1] - 17:8

## L

**lack** [1] - 22:10
**language** [1] - 9:1
**last** [5] - 6:14, 6:16, 14:15, 21:21, 26:8
**latitude** [1] - 17:14
**law** [8] - 3:1, 3:14, 19:4, 19:9, 19:23, 22:5, 23:16, 23:17
**laws** [1] - 24:19
**lawyers** [1] - 11:20
**Lay** [1] - 19:20
**lead** [1] - 9:14
**least** [1] - 3:15
**leave** [1] - 23:12
**left** [5] - 15:12, 18:17
**legal** [4] - 6:24, 18:19, 20:7, 22:13
**lends** [1] - 4:1
**less** [1] - 25:13
**letters** [1] - 23:2
**level** [1] - 17:17
**liability** [1] - 18:22
**lieu** [1] - 25:23
**liquidity** [1] - 18:16
**list** [3] - 3:5, 6:7, 13:11
**litigation** [3] - 25:11, 25:13, 25:18
**LITTLE** [1] - 1:21
**LLP** [3] - 1:19, 1:23, 2:2
**logical** [1] - 22:12
**look** [3] - 3:24, 13:10, 22:1
**looking** [1] - 21:24
**loss** [1] - 5:19
**lost** [1] - 5:17

## M

**mail** [4] - 10:16, 15:1, 15:2, 15:8
**mails** [1] - 20:23
**majority** [1] - 6:1
**Management** [1] - 20:9
**manager** [5] - 18:12, 18:14, 18:19, 22:7, 22:9
**managers** [4] - 20:25, 21:8, 21:9
**MARGARET** [1] - 1:21
**mark** [1] - 6:19
**market** [3] - 6:12, 7:8, 8:22
**Marsha** [1] - 2:5
**matched** [1] - 21:4
**material** [2] - 8:4, 10:2
**matter** [9] - 4:13, 12:7, 19:4, 22:5, 22:12, 22:13, 23:17, 23:22, 24:17
**matters** [1] - 10:13
**mATTHEW** [1] - 1:8
**Mc** [1] - 1:15
**MCGOVERN** [1] - 2:16
**McGovern** [21] - 2:12, 3:10, 10:4, 12:19, 12:22, 14:14, 15:5, 16:3, 16:11, 17:19, 19:18, 20:4, 20:15, 20:20, 21:8, 21:17, 21:20, 22:6, 22:19, 27:4

**mean** [4] - 8:12, 19:11, 19:25, 26:6
**meaning** [1] - 24:3
**mechanical** [1] - 2:8
**mechanically** [1] - 10:19
**member** [2] - 5:17, 7:7
**memorandum** [4] - 8:7, 23:1, 23:3
**mentioned** [1] - 19:10
**met** [2] - 4:12, 14:16
**micromanage** [1] - 4:24
**mid** [1] - 9:13
**might** [3] - 10:3, 16:14, 16:15
**million** [2] - 22:17, 22:19
**missing** [1] - 2:20
**moments** [1] - 5:22
**money** [2] - 5:17, 23:2
**monitor** [1] - 3:6
**month** [1] - 26:22
**morning** [5] - 2:11, 2:17, 4:16, 8:20, 25:20
**most** [1] - 17:15
**motion** [4] - 17:20, 21:21, 25:22, 26:14
**moving** [1] - 20:10
**MR** [24] - 2:12, 2:16, 3:10, 4:12, 8:17, 10:4, 12:19, 12:22, 14:14, 15:5, 16:3, 16:11, 17:19, 19:18, 20:4, 20:15, 20:20, 21:8, 21:17, 21:20, 22:19, 25:20, 26:11, 27:4
**MS** [27] - 2:11, 2:17, 2:21, 2:23, 3:3, 3:15, 9:3, 9:6, 9:16, 10:9, 10:14, 12:25, 13:15, 13:21, 14:2, 15:23, 16:15, 16:21, 17:6, 17:12, 22:3, 22:22, 22:25, 23:16, 25:4, 25:7, 25:15

## N

**N.W** [1] - 1:19
**nature** [1] - 14:22
**necessarily** [2] - 19:24, 24:16
**necessary** [3] - 6:4, 6:8, 25:12
**need** [5] - 11:14, 12:21, 26:19, 26:22, 27:1
**negative** [1] - 8:13
**Nelson** [1] - 25:20
**net** [1] - 26:3
**NEW** [1] - 1:2
**New** [7] - 1:7, 1:17, 1:24, 2:3, 2:6
**next** [10] - 9:11, 9:17, 9:24, 11:8, 11:10, 14:8, 14:11, 14:12, 23:8, 23:9
**nice** [1] - 26:20
**nicety** [1] - 18:20
**night** [1] - 13:16
**Nina** [1] - 2:23
**NINA** [1] - 1:25
**nine** [2] - 5:12, 7:6
**nitty** [1] - 11:23
**nitty-gritty** [1] - 11:23
**Northern** [1] - 19:20
**note** [1] - 4:11
**notes** [3] - 4:7, 4:8, 12:9

**nothing** [1] - 20:16
**notice** [1] - 23:24
**notion** [1] - 23:13
**nuisances** [1] - 22:21
**number** [4] - 4:3, 5:16, 8:2, 8:5

## O

**o'clock** [1] - 1:10
**obvious** [1] - 11:15
**obviously** [1] - 26:15
**occasions** [1] - 21:11
**October** [1] - 26:18
**OF** [2] - 1:2, 1:11
**offering** [3] - 8:7, 23:1, 23:3
**office** [1] - 26:25
**official** [1] - 24:6
**oft** [1] - 15:1
**often** [1] - 6:22
**Ohio** [1] - 19:20
**once** [3] - 18:1, 18:23, 24:13
**one** [10] - 7:13, 8:2, 8:21, 8:22, 12:25, 14:22, 15:4, 17:2, 23:8, 23:25
**oOo** [1] - 27:6
**open** [1] - 8:24
**openings** [1] - 14:11
**opportunity** [1] - 12:9
**opposition** [1] - 21:21
**ordinary** [1] - 24:3
**original** [1] - 18:8
**originals** [1] - 11:4
**otherwise** [1] - 24:19
**ourselves** [1] - 15:22
**outstanding** [1] - 25:22
**overbroad** [3] - 5:11, 7:18, 8:19
**overly** [1] - 7:4
**own** [2] - 2:21, 7:20
**owned** [1] - 5:7

## P

**p.m** [1] - 9:25
**page** [3] - 23:8, 23:9
**papers** [1] - 10:11
**Park** [1] - 2:2
**part** [1] - 16:6
**particular** [5] - 7:17, 10:2, 12:6, 12:13, 22:2
**particularly** [1] - 13:4
**passive** [1] - 20:25
**past** [1] - 11:18
**patience** [1] - 24:25
**PATRICK** [1] - 1:16
**pause** [1] - 18:23
**pension** [2] - 5:23, 5:25
**people** [1] - 11:22
**peremptory** [1] - 14:4
**perhaps** [4] - 17:12, 19:10, 19:22,

24:24
**period** [1] - 26:3
**periodically** [1] - 3:20
**person** [2] - 15:15, 24:9
**personal** [1] - 15:2
**picking** [1] - 12:10
**place** [2] - 2:22, 22:20
**placement** [1] - 8:7
**Plaintiff** [1] - 1:5
**plan** [3] - 5:23, 6:1, 10:17
**planning** [1] - 10:4
**playing** [1] - 19:11
**Plaza** [1] - 1:17, 2:6
**pleasant** [1] - 26:20
**points** [1] - 20:6
**portfolio** [1] - 21:9
**portion** [1] - 23:3
**posed** [1] - 15:6
**position** [3] - 20:16, 21:7, 22:3
**positive** [1] - 24:23
**possible** [2] - 15:7, 25:12
**possibly** [4] - 9:13, 15:14, 18:25, 24:18
**potential** [1] - 14:16
**practical** [1] - 24:17
**predisposed** [2] - 8:9, 8:11
**preempts** [1] - 12:17
**preliminary** [1] - 14:9
**prepared** [1] - 14:12
**preparing** [2] - 3:21, 23:6
**presented** [1] - 23:11
**pressed** [1] - 3:7
**presumably** [2] - 11:10, 14:3
**presumption** [1] - 11:20
**pretty** [1] - 3:10
**previous** [1] - 4:20
**private** [1] - 8:7
**problem** [7] - 7:12, 11:25, 13:22, 15:6, 15:13, 16:2, 16:4
**problematic** [1] - 5:5
**problems** [3] - 18:16, 21:12, 27:1
**Proceedings** [2] - 2:8, 27:5
**proceedings** [1] - 25:14
**proceeds** [1] - 16:5
**process** [2] - 12:25, 23:24
**produce** [3] - 25:24, 26:4, 26:16
**produced** [6] - 2:9, 16:1, 16:17, 16:22, 16:24, 17:3
**production** [1] - 17:9
**professional** [1] - 11:20
**professionals** [1] - 11:22
**proffer** [1] - 19:13
**progress** [3] - 3:24, 4:10
**prohibition** [1] - 23:25
**proper** [2] - 5:15, 21:25
**proposed** [2] - 4:17, 8:20
**proposition** [1] - 20:1
**propounded** [1] - 4:3
**propriety** [1] - 4:14

**prospective** [2] - 6:25, 11:16
**prospectus** [4] - 6:24, 7:1, 8:10, 8:12
**prospectuses** [1] - 8:3
**protected** [1] - 22:11
**prove** [1] - 20:21
**provided** [2] - 5:23, 23:8
**proving** [2] - 15:13, 19:19
**provision** [1] - 23:8
**purchase** [1] - 24:2
**pure** [1] - 19:8
**purely** [1] - 16:5
**put** [3] - 9:11, 20:5, 24:21

**Q**

**qualifies** [1] - 24:11
**quash** [2] - 25:22, 26:14
**questioned** [1] - 12:3
**questioning** [2] - 12:4, 14:3
**questionnaire** [15] - 3:6, 3:23, 4:1, 4:15, 4:17, 4:21, 5:1, 7:23, 9:10, 10:15, 11:1, 12:14, 12:23, 13:5, 13:12
**questionnaires** [6] - 10:21, 10:22, 11:10, 12:5, 13:10, 13:16
**questions** [12] - 4:2, 4:6, 4:15, 5:21, 7:5, 7:18, 8:19, 9:17, 12:15, 12:20, 12:24, 24:13

**R**

**raise** [1] - 15:17
**raised** [1] - 4:16
**RALPH** [1] - 1:8
**reach** [1] - 26:10
**reached** [3] - 25:5, 25:19, 26:24
**reaction** [2] - 7:22, 8:18
**read** [8] - 5:2, 7:1, 8:7, 8:10, 8:14, 9:5, 17:23, 18:8
**reading** [1] - 8:3
**ready** [1] - 14:7
**real** [3] - 26:1, 26:2
**really** [8] - 3:6, 6:18, 7:16, 8:20, 11:12, 11:22, 20:1, 24:21
**reason** [1] - 24:22
**reasonable** [3] - 11:11, 18:4, 24:8
**reasons** [1] - 26:22
**received** [2] - 4:10, 6:24
**receiving** [1] - 8:5
**recently** [1] - 24:2
**recognize** [1] - 18:4
**reconsider** [1] - 18:2
**record** [5] - 9:23, 17:23, 18:9, 25:9, 26:12
**recorded** [1] - 2:8
**redemption** [1] - 18:16
**reduce** [1] - 17:24
**reflected** [2] - 4:18
**reflecting** [1] - 25:24

**reflects** [1] - 4:19
**refuses** [1] - 22:10
**regard** [1] - 18:19
**regularly** [1] - 21:1
**regulations** [1] - 22:10
**relationship** [4] - 21:16, 21:19, 21:23, 23:14
**relationships** [1] - 19:3
**relevance** [1] - 5:10
**relevancy** [2] - 6:11, 6:23
**relevant** [1] - 17:10
**remind** [1] - 13:8
**repeat** [1] - 25:12
**replace** [2] - 7:5, 7:13
**reporter** [1] - 24:7
**Reporter** [1] - 2:5
**reports** [1] - 24:6
**representations** [1] - 26:14
**request** [1] - 13:1
**requests** [2] - 25:22, 25:23
**required** [1] - 6:9
**requirement** [1] - 23:4
**requisite** [1] - 19:16
**resolution** [1] - 17:20
**resolved** [1] - 23:21
**resources** [1] - 4:24
**respect** [5] - 18:5, 22:13, 22:22, 23:5, 23:24
**respective** [1] - 4:14
**respects** [1] - 18:11
**respond** [1] - 6:9
**responding** [1] - 25:23
**responsibility** [1] - 19:16
**responsive** [1] - 26:15
**review** [1] - 11:11
**RICHARD** [1] - 1:23
**Richard** [1] - 2:24
**room** [1] - 11:2
**Rosh** [1] - 9:21
**ruined** [1] - 18:20
**rule** [1] - 24:18
**ruling** [8] - 17:22, 18:2, 18:8, 19:6, 20:10, 22:15, 24:17, 24:24
**run** [1] - 13:21

**S**

**sale** [1] - 24:2
**satisfied** [1] - 24:8
**satisfy** [1] - 16:12
**schedule** [4] - 9:12, 13:25, 14:1, 24:22
**scope** [1] - 24:11
**search** [1] - 26:13
**SEC** [2] - 22:10, 24:5
**Second** [2] - 18:23, 24:2
**Section** [2] - 23:25, 24:12
**securities** [1] - 24:2
**see** [7] - 4:5, 4:8, 6:18, 7:21, 23:7,

25:1, 27:2
**See** [1] - 3:12
**seeing** [1] - 3:11
**seem** [2] - 16:2, 16:23
**sell** [1] - 22:16
**sense** [3] - 12:8, 19:5, 23:19
**sent** [3] - 11:5, 13:4, 15:2
**sentence** [1] - 7:11
**September** [9] - 3:12, 3:13, 3:18, 4:5, 9:13, 9:20, 9:24, 26:23, 27:2
**seriously** [1] - 17:25
**services** [1] - 27:2
**set** [3] - 3:17, 22:6, 27:5
**setting** [1] - 9:17
**shape** [1] - 19:1
**share** [3] - 3:19, 3:25, 9:9
**Shelley** [1] - 25:21
**Shelly** [1] - 2:4
**shoes** [2] - 2:20, 2:21
**shortly** [1] - 10:8
**shot** [1] - 24:14
**show** [1] - 19:22
**shown** [1] - 19:21
**significance** [1] - 22:20
**similar** [3] - 6:24, 7:1, 8:17
**simply** [2] - 17:1, 23:25
**Sinclair** [4] - 2:16, 4:11, 8:16, 19:5
**SINCLAIR** [3] - 1:16, 4:12, 8:17
**single** [1] - 26:8
**sit** [2] - 13:24, 17:11
**situation** [4] - 2:25, 8:21, 8:22, 22:2
**situations** [1] - 19:21
**six** [1] - 4:20
**skilled** [1] - 11:19
**solicited** [1] - 21:9
**solicitude** [1] - 24:25
**sometimes** [1] - 25:13
**song** [2] - 3:12, 3:13
**soon** [1] - 15:7
**sophisticated** [1] - 11:20
**sort** [4] - 7:21, 15:1, 20:10, 21:18
**sorting** [1] - 22:21
**speaks** [1] - 22:7
**specific** [2] - 4:15, 19:3
**specifically** [1] - 14:24
**spectrum** [1] - 24:4
**speedy** [2] - 25:9, 25:18
**spend** [2] - 3:14, 17:12
**spoken** [1] - 15:1
**spotted** [1] - 12:6
**squares** [1] - 23:13
**stability** [1] - 24:10
**stage** [1] - 11:9
**staging** [1] - 3:20
**standing** [3] - 2:15, 2:20, 2:21
**stands** [1] - 20:1
**start** [2] - 13:17, 14:10
**started** [1] - 13:1
**statement** [2] - 26:3, 26:4

**STATES** [3] - 1:1, 1:4, 1:12
**States** [5] - 1:6, 1:14, 1:16, 2:10, 2:13
**status** [1] - 9:18
**STATUS** [1] - 1:11
**Stearns** [4] - 15:9, 15:16, 15:21, 20:9
**stenography** [1] - 2:8
**Sterns** [2] - 14:19
**stipulate** [7] - 14:18, 14:21, 14:25, 15:10, 16:8, 16:9, 16:24
**stipulating** [1] - 15:25
**stipulation** [2] - 14:17, 15:25
**stock** [5] - 6:12, 6:20, 7:8, 7:9, 8:22
**stopped** [2] - 6:14, 6:16
**Street** [2] - 1:19, 1:24
**strong** [1] - 13:5
**strongly** [1] - 21:25
**structured** [1] - 23:18
**stuff** [1] - 22:14
**submit** [2] - 12:19, 12:24
**submitted** [1] - 26:3
**subpoena** [3] - 2:25, 25:3, 25:19
**substantive** [1] - 24:1
**success** [1] - 5:9
**suddenly** [1] - 22:7
**suffices** [1] - 20:11
**suggest** [3] - 5:20, 7:5, 7:19
**suggestion** [1] - 9:12
**suggestions** [1] - 7:21
**summer** [2] - 9:14, 26:21
**sums** [1] - 3:10
**sundown** [1] - 9:21
**supervise** [1] - 10:23
**support** [1] - 20:13
**Supreme** [1] - 21:22
**surprised** [1] - 23:6
**survive** [1] - 12:1
**SUSAN** [1] - 1:25
**susan** [1] - 2:23
**suspect** [1] - 26:21

## T

**TANNIN** [1] - 1:8
**Tannin** [5] - 2:1, 14:25, 15:15, 20:24, 22:5
**Tannin's** [2] - 15:11, 16:6
**technology** [1] - 26:25
**TEL** [1] - 2:7
**tend** [1] - 20:19
**terms** [3] - 3:21, 22:21, 24:21
**terribly** [1] - 8:15
**territory** [1] - 25:12
**THE** [63] - 1:11, 2:10, 2:14, 2:19, 2:25, 3:5, 3:11, 3:17, 4:22, 7:25, 8:15, 8:24, 9:4, 9:8, 9:19, 9:20, 9:24, 10:1, 10:6, 10:11, 10:19, 11:1, 11:3, 11:4, 11:7, 11:8, 11:9, 12:21, 12:23, 13:8, 13:18, 13:20, 13:24, 14:3, 14:6, 14:7, 15:4, 15:19, 16:2, 16:8, 16:13, 16:18, 17:1,

17:10, 17:14, 17:21, 19:25, 20:10, 20:19, 21:6, 21:14, 21:18, 21:24, 22:14, 22:20, 22:24, 23:11, 23:20, 25:6, 25:8, 25:16, 26:5, 26:17
**themselves** [1] - 21:7
**theory** [2] - 18:14, 18:21
**thereafter** [1] - 10:23
**therefore** [1] - 24:11
**thin** [1] - 13:23
**thoughts** [2] - 3:19, 3:25
**three** [2] - 5:21, 25:23
**time-wise** [1] - 11:9
**today** [5] - 3:5, 3:9, 13:9, 23:6, 26:19
**took** [2] - 15:15, 15:20
**touched** [1] - 21:20
**toward** [1] - 21:15
**trade** [1] - 18:13
**trading** [7] - 3:8, 18:3, 18:22, 22:8, 22:12, 23:24, 24:4
**traffic** [1] - 10:17
**training** [2] - 6:5, 7:14
**transcript** [2] - 2:9, 24:7
**TRANSCRIPT** [1] - 1:11
**transcripts** [1] - 20:22
**trial** [11] - 14:7, 14:10, 16:5, 18:25, 19:7, 19:14, 19:19, 24:18, 25:2, 25:9, 25:18
**trials** [1] - 4:20
**trouble** [1] - 26:6
**trusts** [1] - 26:1
**try** [4] - 8:25, 10:6, 12:4, 17:7
**trying** [2] - 22:1, 24:10
**turned** [2] - 15:8, 15:11
**Twelfth** [1] - 1:19
**two** [7] - 5:21, 7:11, 21:10, 22:17, 22:19, 25:22, 26:8
**type** [4] - 3:25, 5:8, 8:20, 19:3
**types** [1] - 21:14

## U

**ultimately** [1] - 18:17
**under** [2] - 18:12, 23:16
**undertake** [1] - 26:13
**unfolds** [1] - 25:1
**unfortunate** [1] - 5:14
**uniqueness** [1] - 18:5
**UNITED** [3] - 1:1, 1:4, 1:12
**United** [5] - 1:6, 1:14, 1:16, 2:10, 2:13
**unless** [1] - 4:8
**unwieldily** [1] - 11:24
**unwilling** [2] - 14:21, 14:25
**up** [6] - 3:10, 9:14, 12:10, 12:15, 21:4, 23:4
**upset** [1] - 23:7
**ure** [1] - 23:20
**urgency** [1] - 18:6
**urging** [1] - 16:7
**useful** [1] - 3:21

**usual** [2] - 2:14, 2:19

## V

**variant** [1] - 23:25
**vast** [1] - 6:1
**vehicles** [1] - 18:11
**venire** [1] - 10:20
**versus** [2] - 2:10, 24:5
**vest** [1] - 19:12
**viable** [1] - 18:22
**view** [1] - 8:11
**views** [2] - 4:14, 8:9
**violation** [1] - 20:21
**voluntary** [1] - 16:5

## W

**waive** [1] - 25:9
**waived** [1] - 25:10
**wants** [1] - 22:12
**Washington** [1] - 1:20
**watching** [1] - 12:8
**water** [1] - 7:16
**week** [1] - 13:19
**whole** [1] - 11:14
**wide** [1] - 24:3
**wILLIAMS** [1] - 1:19
**willing** [3] - 14:18, 15:9, 15:24
**wise** [1] - 11:9
**wiser** [2] - 16:14, 16:16
**wish** [2] - 19:13, 26:20
**withdraw** [2] - 23:2, 25:22
**witness** [3] - 15:14, 15:20, 16:10
**witnesses** [2] - 8:6, 20:22
**words** [2] - 5:14, 10:21
**works** [1] - 10:19
**world** [1] - 13:8
**worsened** [1] - 18:17
**worth** [1] - 26:3
**written** [2] - 3:12, 17:24
**wrote** [1] - 3:13

## Y

**years** [3] - 6:15, 6:16, 26:9
**yesterday** [4] - 4:12, 4:18, 4:19, 15:24
**YORK** [1] - 1:2
**York** [7] - 1:7, 1:17, 1:24, 2:3, 2:6
**yourself** [2] - 11:14, 13:6