# EXHIBIT A

1       UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF NEW YORK

2

3 ------------------------------X
             :

4 SECURITIES AND EXCHANGE  : 08-CV-2457
  COMMISSION,      :

5           : December 9, 2009
      Plaintiff,  : Brooklyn, New York

6           :

7     v.      :

 CIOFFI, et al.,     :

8           :

      Defendants.  :

9 ------------------------------X

10   TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
    BEFORE THE HONORABLE VIKTOR V. POHORELSKY

11     UNITED STATES MAGISTRATE JUDGE

12

 APPEARANCES:

13

14 For the SEC:     JACK WORLAND, ESQ.
           ERICA WILLIAMS, ESQ.

15

16

 For Defendant/Cioffi:  MARK WEINSTEIN, ESQ.

17

18

 For Defendant/Tannin:  THERESA TRASKOMA, ESQ.

19

20

21

 Court Transcriber:   SHARI RIEMER

22           TypeWrite Word Processing Service
           211 N. Milton Road

23           Saratoga Springs, New York 12866

24

25

 Proceedings recorded by electronic sound recording,
 transcript produced by transcription service

2

1          THE CLERK: Civil Cause for Status Conference in 08-

2  CV-2457, SEC v. Cioffi and Tannin.

3          Counsel, please state your appearances for the

4  record.

5          MR. WORLAND:  Jack Worland on behalf of the SEC.

6  With me is Erica Williams who has not yet been admitted to the

7  Eastern District.  We're in the process of putting her papers

8  in.

9          MR. WEINSTEIN:  Marc Weinstein from Hughes, Hubbard &

10  Reed on behalf of Mr. Cioffi.

11          MR. LITTLE: And Ed Little from Hughes, Hubbard as

12  well for Cioffi, Your Honor.

13          MS. BEATTIE: And Nina Beattie and with me is Theresa

14  Trzaskoma from Brune & Richard on behalf of Matthew Tannin.

15          THE COURT: Could you spell --

16          MS. TRASKOMA:  Trzaskoma, yes.  T-R-A-S-K-O-M-A.

17          THE COURT: T-R-A-S-K-O-M-A?

18          MS. TRASKOMA:  Yes, the usual spelling.

19          THE COURT: Did you say it was Theresa?

20          MS. TRASKOMA:  Yes, Theresa, T-H-E-R-E-S-A.

21          THE COURT: Thank you.  Please be seated.

22          Well, there have been some developments but I'm

23  willing to take -- we'll probably free up matters so that the

24  discovery can get underway in earnest here. Am I being too

25  optimistic?  I think I'm really looking at the defendants

3

1   because the principle sort of roadblock here was the assertion

2   of privilege which brought -- without any detailed knowledge of

3   the case -- it appears to me that that now has given way given

4   the acquittals.

5         MR. LITTLE:   We believe that's the case, Your Honor.

6   There are a few things we're looking at.   We should be able to

7   answer that definitively pretty shortly.   There was -- it's no

8   secret.   There was a count that was voluntarily dismissed by

9   the Government for failure of venue but we believe that count

10  is basically a duplication of other charges as to which the

11  defendants were acquitted.   So there's probably double jeopardy

12  there.   So we're fairly certain there are no more issues and I

13  think it's likely that our client will testify but we'll be

14  able to respond definitively to that shortly.

15        Our biggest concern is this, and I appreciate the

16  Commissioner Leon [Ph.] was being careful in terms of

17  designating witnesses for depositions and the first list we had

18  had some 150 people on it.   I think it's been refined down to

19  about 127.   What we would propose is this, that all three

20  parties get together and try to focus on a much more reasonable

21  list.   I really don't think anybody here thinks that we need or

22  should take 127 depositions to resolve this especially since

23  there's been a full blown criminal trial at which one of the

24  Commission's lawyers was present as a designated, a cross-

25  designated AUSA.   So bottom line, what we would suggest is that

4

1   we get together and try to reach an agreement on a specific

2   list of witnesses and a schedule for that to commence shortly

3   and then report back to the Court if we can reach an agreement.

4           THE COURT: You've focused primarily on depositions

5   right now in your discussion.  How much document discovery

6   remains? It seems like -- I believe if my memory serves, the

7   plaintiffs were seeking a number of documents from the

8   defendants and there was the active production issue that was

9   raised in connection with that.

10          MR. LITTLE:  Correct, Your Honor.

11          THE COURT: I don't know that the defendants conceded

12  they had any documents but there was at least a potential that

13  there were documents.

14          MR. LITTLE:  That's an issue for Mr. Tannin's

15  lawyers, Your Honor, not for us.

16          THE COURT: Why is that, because you produced

17  everything you have?

18          MR. LITTLE:  I have to go back and double check that

19  because it was interrupted but we did not assert the active

20  production privilege back then and we had already produced

21  documents to the U.S. Attorney's Office and I think we

22  duplicated that.  I'd have to go back and double check that but

23  that wasn't the issue that tied us up.

24          THE COURT: All right.  So, in other words, as far as

25  you know you had not refused to produce documents on the basis

5

1    of any privilege.

2              MR. LITTLE:  Correct.

3              THE COURT: Ms. Beattie, is it?

4              MS. BEATTIE: Yes.  That is correct.  We did assert an

5    active production privilege without waiving at this time the

6    privilege for the reasons that Mr. Little stated and that we

7    just wanted to review given the short passage of time since the

8    verdict we want to take a good hard look at this without

9    waiving the privilege by -- hypothetically speaking, there's

10   not a whole lot of production that needs to be -- needs to

11   happen here.  The SEC -- substantial production has already

12   been made from both defendants, emails and whatnot.

13             THE COURT: So the principle -- well, the principle

14   thing remains is in fact the depositions.

15             MS. BEATTIE: That's correct.

16             THE COURT: What's your view of -- Mr. Little referred

17   to 127 witnesses.  These were witnesses identified by the SEC

18   as people with knowledge.

19             MR. LITTLE: Yes, Your Honor.

20             THE COURT: Your automatic disclosures?

21             MR. LITTLE: Yes, Your Honor.

22             THE COURT: Mr. Little is suggesting that the parties

23   confer on a list of witnesses to be deposed.  I think the

24   proposal is is that would be also constrict the list of

25   witnesses who would be permitted to testify at trial.  Did I

6

1  understand that to be your suggestion, Mr. Little?

2         MR. LITTLE: Yes.  I think we should -- both sides

3  should focus both on the depositions and a list of trial

4  witnesses.

5         MALE VOICE:  Your Honor, there's always a chance that

6  we learn about somebody late but I would agree that what we're

7  trying to do is get a list of people who --

8         THE COURT: A likely trial --

9         MALE VOICE: A subset of the people who have knowledge

10 to people who actually might be productive to depose.

11        THE COURT: And to testify at trial?

12        MALE VOICE: Yes.  But I suspect our list of people

13 who might be deposed will be longer than the list of people we

14 ultimately call to trial.

15        THE COURT: That's certainly possible too.  But Mr.

16 Little is right that the Court would not really consider

17 permitting 127 depositions to take place in this case.  More

18 than the presumptive ten perhaps per side but -- or per party

19 perhaps but not up to 127.

20        It sounds like a good place to start.  How much time

21 do you think you need to a) wrap up the review of privilege and

22 then b) sit down on the witness list -- on the witness issue?

23        MS. BEATTIE: I'd say the end of January.  How is the

24 end of January?

25        THE COURT: Mr. Worland, I presume the defendants are

7

1  in agreement on that.

2          MR. WORLAND: Yes.  We suggested the end of January.

3          MR. LITTLE:  This is for us to propose a schedule for

4  the Judge?

5          MS. BEATTIE: Yes.

6          THE COURT: We would get back together again at that

7  time at which you would apprise me of what you had agreed upon

8  with respect to the number of witnesses, if not all the

9  specific ones, and -- if you can get that -- if you can get

10 specific as to identify all the witnesses that you'd be -- that

11 would be fine too.  I would urge you to try to do that but then

12 that would give me enough information to set reasonable

13 deadlines for those depositions and all other discovery to be

14 completed.

15         MALE VOICE:  I agree with that, Your Honor.  The one

16 thing that -- and I don't think it's a problem, but as Mr.

17 Little mentioned there was an SEC attorney who was involved in

18 our original investigation and then was designated to serve as

19 an AUSA and was within the 60 order and I understand he would

20 feel more comfortable if we got the 60 order lifted so that --

21 before he started communicating with us and he obviously knows

22 more about the case than anybody else at the SEC, and

23 specifically with paring down witnesses he would be very

24 helpful.

25         THE COURT: You say the 60 order.  Was there some

8

1  order --

2         MALE VOICE: He was entered on the Grand Jury secrecy

3  order and he had --

4         THE COURT: Well, Grand Jury secrecy is automatic by

5  operation of federal criminal rules.  Was there some sort of

6  order that identified all of the people at the SEC who were

7  permitted to obtain access to Grand Jury material?  Is that

8  that what you're talking about?

9         MALE VOICE: Yes, Your Honor.

10        THE COURT: There were others I presume.

11        MALE VOICE: There was only one SEC lawyer who had

12 access to the Grand Jury materials and it's my understanding

13 that the U.S. Attorney's Office is going to make a request that

14 the 60 order be lifted and that the Grand Jury material all be

15 made available.

16        MALE VOICE: I would imagine that could be a very

17 quick telephone call with Judge Block.  I mean that shouldn't

18 hold us up too long.

19        MALE VOICE: That's the way it usually works but I've

20 had instances where it didn't but I suspect it will be very

21 quick.

22        THE COURT: Do you suppose that all Grand Jury

23 testimony would be revealed as well?

24        MALE VOICE: I think so --

25        THE COURT: To all sides?

9

1          MALE VOICE: Yes, I think that's the goal here.

2          THE COURT: And everybody is going to agree to that.

3   What about the witnesses themselves, don't they have something

4   to say about it or maybe not?

5          MALE VOICE: I'm not sure there are all that many

6   witnesses who actually appeared before the Grand Jury, Your

7   Honor.

8          THE COURT: That's definitely not [inaudible] within

9   my [inaudible].

10          MALE VOICE: I agree with Mr. Little there shouldn't

11   be a --

12          THE COURT: There shouldn't be a problem, okay.  Good.

13   That would be great.  That ought to help focus discovery too,

14   shouldn't it?

15          MALE VOICE: Sure.

16          THE COURT: I guess my only other task is to set a

17   date when we can get together again.  Is there anything else we

18   should discuss today?

19          MALE VOICE: I think that's all for now, Your Honor.

20   I think that the --

21          THE COURT: I guess there was one other question I

22   had, the question that I usually raise.  What are the prospects

23   for settlement?

24          MS. BEATTIE: Sorry?

25          THE COURT: What are the prospects for settlement?

10

1   You've seen a lot of each other's evidence already I presume.

2        MR. LITTLE:  We had a meeting yesterday to discuss

3   that, Your Honor, and the gist of it was that we were imploring

4   the SEC to drop the case and I'm not sure that's going to be

5   forthcoming.

6        THE COURT: That's not likely, right?

7        MR. LITTLE:  I don't know. I would think that with

8   the jury verdict coming back as quickly as it did there might

9   be some incentive and the Commission has dropped cases in the

10  past where there have been acquittals like that, but without

11  arguing the point and making life difficult for Mr. Worland --

12       THE COURT: So the short answer is that there's no

13  current imminent prospect.

14       MR. LITTLE: It's not going to settle, Your Honor.

15  We're going to trial if the Commission doesn't drop the case.

16       THE COURT: Okay.  My law clerk tells me and reminds

17  me that there was a motion to compel which was taken under

18  advisement -- held in abeyance basically pending this --

19  pending the criminal trials -- trial, excuse me.  But it may

20  all be moot now.  So --

21       MALE VOICE: I think by the time we come back at the

22  end of January, Your Honor, we will have --

23       THE COURT: You'll tell me what, if anything, I have

24  to decide with respect to any discovery disputes that were

25  previously raised.

11

1           MS. BEATTIE: Yes, Your Honor.

2           MALE VOICE: Your Honor, just for scheduling purposes,

3   I note that the two weeks of January are hearings in the ICMC

4   arbitration which is related to this.

5           MS. BEATTIE: No, they're off.

6           MALE VOICE: I'm sorry.  I forgot.  Those have been

7   canceled.  That's going to mediation.  So we are free the last

8   week of January.

9           THE COURT: What is ICMC?

10          MALE VOICE: That's an arbitration brought by a fund

11  against Bear Stearns and the defendants.

12          THE COURT:  ICMC was the --

13          MALE VOICE: Complainant. So I guess we're are now

14  free the last week of January.

15          MALE VOICE: Just for my purposes, between now and

16  Friday, January 22nd, I think I have nine depositions scheduled.

17          MS. BEATTIE: Why don't we do it in February and do

18  the trial the next week?

19          THE COURT:  So what is your proposal then?

20          MALE VOICE: The week of January 25th.

21          THE COURT: Yes, I was looking at that.  Is that okay?

22          MALE VOICE: That is okay, Your Honor.

23          THE COURT: Well, how is Wednesday the 27th at ten,

24  Thursday the 28th any time in the morning?

25          MALE VOICE: Wednesday is better for me, Your Honor.

12

1    I have a sentencing on Thursday.

2              MS. BEATTIE: Could we do it a little later on

3    Wednesday?

4              THE COURT: Well, it would either be -- I guess we

5    could do it in the afternoon, two p.m. on Wednesday the 27th?

6              MR. WORLAND:  Two p.m. is actually better because ten

7    a.m. is a -- that's a 6:00 train.

8              THE COURT: You're coming from Washington?

9              MR. WORLAND: Yes, Your Honor.

10              THE COURT: So Wednesday the 27th at two p.m.

11              MR. WORLAND: That's good, Your Honor.

12              MR. LITTLE: Thank you.

13                          *  *  *  *  *

13

1    I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                               _____

6                                    Shari Riemer

7  Dated:  December 11, 2009

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25